Johnson, Justice,
 

 delivered the opinion of the court. — This is a writ of error to a judgment of the circuit court of Kentucky, brought to reverse the decision of that court, on a bill of exceptions. The suit was ejectment, by Barney, brought to recover a part of a tract of 50,000 acres of land, in possession of Hawkins, within the limits of his patent. Both parties claimed under Virginia patents, of which Barney’s was the eldest. The plaintiff below proved a grant to Barbour, and a conveyance from the patentee to himself. The defendant below proved a grant to one May, a conveyance from May to Creemer, and from Creemer to himself. He then proved, that Creemer entered into possession under May, in 1796, and resided on the land so conveyed to him, until he sold to defendant below ; who has had peaceable possession of the premises ever since, until the present suit was *4641 brought, which was May 4th, 1817. *This state of facts brings out ^ the principal question in the cause, which was on the constitutionality of the present limitation act of that state, commonly known by the epithet of the seven years’ laAV. The court charged the jury in favor of Barney, and the verdict was rendered accordingly.
 

 It is now argued, that, by the seventh article of the compact with Virginia, Kentucky was precluded from passing such a law. And that this court has, in fact, established this principle, in their decision against the validity of the occupying claimant laws. I am instructed by the court to say, that such is not their idea of the bearing of that decision. On a subject so often and so ably discussed in this court and elsewhere, and on which the public mind has so long pondered, it would be an useless waste of time to amplify. A very few remarks only will be bestowed upon it. The article reads thus : “ All private rights and interests of lands within the said district, derived from the laws of Virginia, prior to such separation, shall remain valid and secure under the laws of the proposed state, and shall be determined by the laws now existing in this state.” Taken in its literal sense, it is not very easy to ascribe to this article any more than a confirmation of present existing rights and interests, as derived under the laws of Virginia. And this, in ordinary eases of transfer of jurisdiction, is exactly what would have taken place, upon a known principle of international and political law, without the protection of such an article. We have an analogous case in the 34th section of the judiciary act of the United States ; in which it is enacted, that the laws of the several states shall be rules of-decision in the courts of the United States ; and which has been uniformly held to be no more than a declaration of what the law would have been without it : to wit, that the
 
 lex loci
 
 must be the governing rule of private right, under whatever jurisdiction private right comes to be examined.
 

 And yet, when considered in relation to the actual subject to which this
 
 *299
 
 art icio was to be applied, and the peculiar phraseology of it, there will be found no little reason for inquiring, whether it does not mean something more than would be ^implied without it ? or why it was introduced, if not intended to mean something more? It had an almost anoma- L lous subject to operate upon. I perceive, that in the copy of Littell’s laws, which has been sent to our chambers, some one has had the perseverance to go over the legislation of Virginia, relating to the lands of Kentucky, whilst under her jurisdiction, and to mark the various senses to which the word rights has been applied, in the course of her legislation. It is curious, to observe how numerous they are. Her land system was altogether peculiar, and presented so many aspects in which it was necessary to consider it, in order to afford protection to the interests imparted by it, that it might, with much apparent reason, have been supposed to require something more than the general principle, to secure those interests. So much remained yet to be done, to impart to individuals the actual fruition of the sales or bounties of that state, that there must have been, unavoidably, left a wide range for the legislative and judicial action of the newly-created commonwealth. When about then to surrender the
 
 care
 
 and preservation of rights and interests, so novel and so complex, into other hands, it was not unreasonably supposed by many, that the provisions of the compact of separation were intended to embrace something beyond the general assertion of the principles of international law, in behalf of the persons whose rights were implicated in, or jeoparded by the transfer. Such appears to have been the view in which the majority of this court regarded the subject in the case of
 
 Green
 
 v.
 
 Biddle ;
 
 when, upon examining the practical operation of the occupying claimant laws of Kentucky, upon the rights of land-holders, they were thought to bo like a disease planted in the vitals of men’s estate, and a disease against which no human prudence could have guarded them, or at least no practical prudence, considering the state of the country, and the nature of their interests. And when, again, upon looking through the course of legislation in Virginia, there was found no principle or precedent to support sueh laws, the court was induced to pass upon them as laws calculated in effect to annihilate the rights secured by the compact, while they avoided an avowed collision with its literal meaning. But in all their Reasoning on the subject, they will be found to acknowledge, that whatever course of L legislation could be sanctioned by the principles and practice of Virginia, would be regarded as an unaffected compliance with the compact.
 

 Such, we conceive, are all reasonable quieting statutes. From as early a date as the year 1V05, Virginia has never been without an act of limitation. And no class of laws is more universally sanctioned by the practice of nations, and the consent of mankind, than laws which give ¡^eace and confidence to the actual possessor and tiller of the soil. Such laws have frequently passed in review before this court; and occasions have occurred, in which they have been particularly noticed as laws not to be impeached on the ground of violating private right. What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his rights ? All the reasonable purposes of justices are subserved, if the courts of a state have been left open to the prosecution of suits, for such a time as may reasonably raise a presumption in the occupier of the soil that the fruits of his labor are effectually secured beyond the chance of
 
 *300
 
 litigation.
 
 Interest reipublieoe ut finis sit litium •
 
 and
 
 vigilantibus non dormientibus suocurrit lex,
 
 are not among the least favored of the maxims of the law.
 

 It is impossible to take any reasonable exception to the course of legislation pursued by Kentucky on this subject. She has, in fact, literally complied with the compact, in its most rigid construction ; for she adopted the very statute of Virginia, in the first instance, and literally gave to her citizens the full benefit of twenty years to prosecute their suits, before she enacted the law now under consideration. As to the exceptions and provisos and savings in such statutes, they must necessarily be left, in all cases, to the wisdom or discretion of the legislative power.
 

 It is not to be questioned, that laws, limiting the time of bringing suit, constitute a part of the
 
 lex fori
 
 of* every country; they are laws for administering justice; one of the most sacred and important of sovereign lights and duties ; and a restriction upon which must materially affect both legislative and judicial independence. It can scarcely be supposed, that Kentucky would have consented to accept a limited and crippled sovereignty; nor is it doing justice to Virginia, to believe, that she ’’would have -J wished to reduce Kentucky to a state of vassalage. Yet it would be difficult, if the literal and rigid construction necessary to exclude her from passing this law were to be adopted ; it would be difficult, I say, to assign her a position higher than that of a dependent on Virginia. Let the language of the compact be literally applied, and we have the anomaly presented, of a sovereign state governed by the laws of another sovereign ; of one-half the territory of a sovereign state hopelessly and for ever subjected to the laws of another state. Or a motley multiform administration of laws, under which A. would be subject to one class of laws, because holding under a Virginia grant; while B., his next-door neighbor, claiming from Kentucky, would hardly be conscious of living under the same government. If the seventh article of the compact can be construed so as to make the limitation act of Virginia perpetual and unrepeatable in Kentucky; then I know not on what principle, the same rule can be precluded from applying to laws of descent, conveyance, devise, dower, curtesy, and in fact every law applicable to real estate.
 

 It is argued, that limitation laws, although belonging to the
 
 lex fori,
 
 and applying immediately to the remedy, yet indirectly they effect a complete divesture and even transfer of right. This is unquestionably true, and yet in no wise fatal to the validity of this law. The right to appropriate a derelict is one of universal law, well known to the civil law, the common law, and to all law; it existed in a state of nature, and is only modified by society, according to the discretion of each community. What is the evidence of an individual having abandoned his rights or property ? It is clear, that the subject is one over which every community is at liberty to make a rule for itself ; and if the state of Kentucky has established the rule of seven years’ negligence to pursue a remedy, there can be but one question made xxpon the right to do so : which is, whether, after abstaining from the exercise of this right for twenty years, it is possible now to impute to her the want of good faith in the execution of this compact.
 

 Virginia has always exercised an analogous right, not only in the foi-rn of an act of limitation, but in requiring actual seating and cultivation. In
 
 *301
 
 the early settlement of the country, the man who *reeeived a grant of land and failed, at first, in three, and afterwards, in five years, to seat and improve it, was held to have abandoned it; it received the denomination of lapsed land, was declared to be forfeited (Mercer’s Abr.), and anyL one might take out a. grant for it. The last member of the eighth article of this compact, distinctly recognises the existence of the power in Kentucky to pass similar laws ; notwithstanding the restrictions of the seventh article, and also the probability of her resorting to the policy of such laws. It restricts her from passing them for six years ; and what is remarkable, the protection of this restriction is expressly confined to the citizens of the two states; leaving the plaintiff below, and all others, not citizens of Virginia, to an uncontrolled exercise of such a power. Forfeiture is the word used in the old laws, and forfeiture is that used in the compact, and the term is correctly applied ; since it supposes a revesting in the commonwealth : and it is remarkable, how scrupulously Kentucky has adhered
 
 to the
 
 Virginian principle in her seven years’ law, since the benefit of it is confined to such only as claim under a grant from the commonwealth ; thus literally applying the Virginian principle, of a revesting in the commonwealth and a regranting to the individual.
 

 Upon the whole, we are unanimously of opinion, that the court below charged the jury incorrectly on this point; and if it stood alone in the cause, the judgment would be reversed.
 
 But as it
 
 must
 
 go
 
 back,
 
 there
 
 are two other points raised in the bill of exceptions which it is necessary to consider here.
 

 The one is upon the sufficiency of the power of attorney executed by John to Robert Oliver, and under which the latter executed a deed to Barney, to revest in him the fee-simple of the land. Upon looking into that instrument, we are satisfied, that although not professional in its style and form, it contains sufficient words to support the deed ; and there was no error in the decision of the court as to this point.
 

 The other question is one of more difficulty. Upon the face of the deed 1 from Barney to Oliver, and the reconveyance from Oliver to Barney, there are recited several conveyances of parcels of the tract granted to Barbour, to several individuals, and particularly of one of 11,000 acres to one Berry-man. The case on which the instruction was prayed makes out that Barney proved Hawkins to have trespassed within the limits of *the 50,000
 
 \
 
 acres ; but it was insisted, that he ought also to have proved thé L 1 trespass to be without the limits of the tract shown to have been conveyed away by himself. On the other side, it was insisted, that the
 
 onus
 
 lay on j Hawkins, to prove that his trespass was within thd limits of one of those ; tracts, and the court charged in favor of Barney. This we conceive to be ' no longer an open question ; it has been solemnly decided, in a series of cases in Kentucky, that the party, offering in evidence a conveyance containing such exceptions, is bound to show that the trespass proved is without the limits of the land so sold or excepted. 3 A. K. Marsh. 20 ; 6 Litt. 281; 1 T. B. Monr. 142. The only doubt in this case was, as to which of the two parties this rule applies, since both, and Hawkins first in order, produced in evidence a deed containg the exceptions. But, whether by the exceptions, or by the deed, Hawkins’s purpose was answered, if he proved the whole land out of Barney. Not so with Barney ; for in the act of proving the re-investment
 
 *302
 
 of the estate in himself, he proved it to be with the exceptions mentioned, and therefore, the rule unquestionably applied to him. From these observations, it results, that the court below erred in refusing to instruct the jury according to the prayer of Hawkins ; to wit, “ that if they believed the evidence, the plaintiff, Barney, had no right of entry when this suit was instituted, and that unless he showed that the 11,000 acres recited to be conveyed to Berryman by Barnejr did not cover the land in question, he was not entitled to recover in that suit.” The judgment is reversed, and the cause remanded for a
 
 venire facias de novo.
 

 Judgment reversed.