No. 93,690

MARLIN M. HAWLEY and KAREN E. HAWLEY, TRUSTEES of the
MARLIN M. HAWLEY TRUST and the KAREN E. HAWLEY TRUST,
*Appellees,* v. KANSAS DEPARTMENT OF AGRICULTURE, Division
of Water Resources, *Appellant.*

(132 P.3d 870)

Opinion filed April 28, 2006.

*Brett W. Berry,* of Kansas Department of Agriculture, Division of Water Resources, of Topeka, argued the cause and was on the brief for appellant.

*Larry G. Michel,* of Kennedy Berkley Yarnevich & Williamson Chartered, of Salina, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

NUSS, J.: The Division of Water Resources, Kansas Department of Agriculture (DWR), appeals an order of the district court setting aside DWR's termination of a water right. The sole issue is whether DWR erroneously interpreted K.S.A. 2005 Supp. 82a-718 when it concluded that one of the notice provisions of the statute, subsection (b), was not a condition precedent to termination of a water right pursuant to subsection (a). The appeal is brought pursuant to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, and our jurisdiction is under K.S.A. 20-3018 (approval of Trustees' motion to transfer).

We reverse the district court and affirm the decision of DWR terminating the water right.

## FACTS

On July 6, 1953, E.E. Conzelman applied to DWR, file number 1575, for a permit to appropriate water for beneficial use from the

Republican River in Republic County, Kansas, through use of a pump and sprinkling system. On October 9, 1953, DWR's chief engineer approved the application for "irrigation purposes." After correcting the land description in the application, the chief engineer issued a certificate of appropriation on May 11, 1960. The certificate informed Conzelman that the water appropriation right "shall exist and continue only by the exercise thereof in a lawful manner. [It] shall be deemed abandoned and shall terminate when without due and sufficient cause no lawful beneficial use is made of water under this appropriation for three (3) successive years."

In November 1978, Conzelman received a letter from DWR concerning water usage between 1975 and 1977:

"If it is determined that no water has been used pursuant to this application or if it is determined that a water right has been perfected to some extent by use of water before 1975, the issue of abandonment and termination of such right or the dismissal of the application will be considered by the Chief Engineer for further action."

Conzelman replied that he had completed water use reports for the years in question, he was not irrigating during the period in question due to crop selection, and he was operating according to conservation guidelines.

Conzelman held the water right until his death on July 30, 1982. Following Conzelman's death, his son, Max, took over operation of the farmland subject to the water right.

On November 23, 1982, DWR again sent a letter concerning abandonment and termination of the water right. In response, Max asserted that use of the water right would change under his management. Based on the change in management, he asked DWR to withhold termination proceedings.

A third letter was sent from DWR in 2000 detailing the nonuse. DWR asserted that according to water use reports, the water right had only been exercised once in over 40 years.

After Max's death in December 2000, the water right passed to his daughter, Karen Hawley, and son-in-law, Marlin Hawley, as trustees of his estate (Trustees). In February 2002, the 2000 DWR letter detailing the nonuse was forwarded to Marlin Hawley with a notice of "possible abandonment."

In May 2003, six other holders of water rights on and around the Republican River sent DWR letters requesting an expedited abandonment hearing for the Trustees' water right. The letter discussed the impact that use of the Trustees' water right would have on other water right holders:

"The last reported diversion of this surface water permit was in 1970. It is known that the owner [Trustees] is using this water right in anticipation that there will be several years before a scheduled abandonment hearing. *Many water right owners, from the Nebraska border down the Republican River, will be directly impacted by the [Trustees'] use of water file number 1,575 in both minimum desirable streamflow calculations and seniority concerns.* We would not want this to start a trend of using water rights that have not complied with Kansas Statutes." (Emphasis added.)

Two months later, in July 2003, DWR sent a letter to the Trustees regarding abandonment and termination of their water right to provide them with "notice . . . and the opportunity to comment." DWR requested documentation of the Trustees' "due and sufficient cause" for periods of nonuse not previously provided by their annual water reports.

In a letter dated August 11, 2003, Marlin Hawley replied that he was not aware why water right No. 1575 had not been used:

"He [Max Conzelman] passed away December 1, 2000, having spent the previous four years of life in a nursing home. Prior to those years, he cared for my invalid mother in their home until her death. He had leased the ground for many years. Otherwise, I am unaware of the reasons why the water right was not used.

"I became aware of this problem in 2001 and promptly installed a pivot system in 2002 and pumped 80 hours. In December, 2002, I received notice that a waterflow meter was required before the watering season. This meter was installed and has been inspected by your Stockton Field Office. I have been irrigating all this summer of 2003."

On December 17, 2003, Scott Ross, an authorized representative of DWR's chief engineer, filed a 20-page verified report regarding permit No. 1575 pursuant to K.S.A. 82a-718. The report was prepared by G. Duane Harris, an engineering technician employed by DWR, after investigating the water use history under the permit. The report concluded that

"no lawful, beneficial use has been made under the above referenced Appropriation of Water for five or more successive years (1971 thru 2002) and . . . due

and sufficient cause for non-use has not been shown. The above referenced Water Right cannot be certified as a water right based on the information herein as required in K.S.A. 82a-714(c). Therefore, I hereby recommend to the Chief Engineer that notice be given and a hearing be held in accordance with the provisions of K.S.A. 82a-718 to determine whether the above referenced Water Right, File No. 1,575 should be declared abandoned and terminated."

One week later, on December 24, DWR initiated proceedings by sending to the Trustees, via certified mail, the verified report and notice of a hearing. The notice stated that the purpose of the hearing was "to determine whether any water right that may exist under the above-referenced file number shall be deemed abandoned and terminated under the provisions of the Kansas Water Appropriation Act." It additionally advised that "[t]he hearing is the parties' opportunity to present evidence (facts) to show whether the lawful, beneficial use of water occurred during the alleged period of non-use or whether due and sufficient cause for such non-use of water existed." Among other things, DWR attached a copy of K.A.R. 5-7-1, promulgated by the chief engineer pursuant to his authority granted in K.S.A. 82a-706a, which identifies 10 different categories of "due and sufficient cause" for non-use of water.

The Trustees filed an answer and motion to dismiss, asserting that due and sufficient cause for nonuse existed and that DWR's compliance with the notice provision of K.S.A. 2005 Supp. 82a-718(b) is a condition precedent to an abandonment action. DWR filed an objection to the motion, arguing that the notice provisions of K.S.A. 2005 Supp. 82a-718(b) only apply to the limited class of water rights where the water right has been unused for 3 successive years but for less than 5 successive years; under the circumstances of the case, only the notice of hearing under subsection (a) was necessary.

The two notices in K.S.A. 2005 Supp. 82a-718 state in relevant part:

"(a) All appropriations of water must be for some beneficial purpose. Every water right of every kind shall be deemed abandoned and shall terminate when without due and sufficient cause no lawful, beneficial use is henceforth made of water under such right for five successive years. Before any water right shall be declared abandoned and terminated the chief engineer shall conduct a hearing

thereon. *Notice shall be served on the user at least 30 days before the date of the hearing . . . .*

. . . .

"(b) When no lawful, beneficial use of water under a water right has been reported for three successive years, *the chief engineer shall notify the user,* by certified mail, return receipt requested, that: (1) No lawful, beneficial use of the water has been reported for three successive years; (2) if no lawful, beneficial use is made of the water for five successive years, the right may be terminated; and (3) the right will not be terminated if the user shows that for one or more of the five consecutive years the beneficial use of the water was prevented or made unnecessary by circumstances that are due and sufficient cause for nonuse, which circumstances shall be included in the notice." (Emphasis added.)

The Trustees' motion to dismiss was denied by the hearing officer in a prehearing order dated February 4, 2004. In the order, she gave several reasons for her holding.

First, she examined the plain language of the statute.

"Because the issues raised require interpretation of a statutory provision, the fundamental rule is to give the statute the effect intended by the legislature. Respondents' argument asserts that, in this case, legislative intent must be determined based on principles of statutory construction. However, statutory construction is only made necessary where the statute at issue is ambiguous. *In re HCA Health Services Inc.,* 30 Kan. App. 2d 910, 51 P.3d 1119 (2002). If a statutory provision is clear from its plain language, then that language is to be applied as expressed. The first inquiry, then is whether the plain language of the statute informs us of its intended application.

. . . .

"This language [subsection (b)(1)] imposes a duty upon the chief engineer to provide a specific type of notice to a distinct subgroup of water right users at a distinct point in time. The notice is to be provided to those users who have reported three successive years of non-use, at the point in time when three successive years of non-use have been reported. In other words, at the point when a water user has reported exactly three years of non-use, the chief engineer should provide the notice described in the provision.

. . . .

"This part [subsection (b)(2)] indicates the notice shall warn the notified user of the potential for termination due to abandonment, which can only occur after five successive years of non-use. It further describes a notice to inform the user of the existence of circumstances that could avoid termination for abandonment.

"The plain language of the statute indicates notice shall be sent to those who have reported exactly three years of non-use, such notice to be sent at the point at which only three years of non-use have been reported, so that the user may avoid termination for abandonment in the future, for five years of non-use without

due and sufficient cause. In the present case, it is uncontroverted that non-use has occurred for 32 consecutive years. In 1999, when this provision was adopted by the Legislature, there had been 29 consecutive years of non-use. Therefore, [Trustees'] argument that K.S.A. 82a-718(b) applies in this case is not persuasive."

Second, she acknowledged the doctrine of operative construction, stating, "It should also be noted that judicial deference is due to an agency's interpretation of statutes applicable to that agency." Finally, she looked at rules of statutory construction.

"Assuming, solely for the sake of argument, that the language of K.S.A. 82a-718(b) is ambiguous, and the rules of statutory construction must be applied, those principles lead to the same conclusion. As [Trustees] have cited in their motion, in construing unclear statutes, a court should avoid unreasonable results and make different provisions consistent, harmonious and sensible. Here, it would be unreasonable to interpret K.S.A. 82a-718(b) as requiring notice to be sent to the owner of a water right after the expiration of five consecutive years of non-use. According to subsection (a), *abandonment occurs by operation of law* upon the occurrence of two facts, [1] a five-year period of non-use and [2] the lack of due and sufficient cause for that non-use. (The 1999 amendments did not change the content of this pre-existing provision, other than to extend the period of non-use from three years to five.) *By the time the five-year period has expired, the controlling facts are set. Either water was used or not, and there was either due and sufficient cause or not. After the five-year period has passed, there is no opportunity to alter those facts. The notice described in subsection (b) could not help an owner whose five-year period was already over.* It cannot have been the legislature's intent to adopt a provision of law that can have no purpose or effect.

"The only way subsection (b) can be read to be consistent and harmonious with the pre-existing (and materially unchanged) first provision is that it allows a user who has reported exactly three years of non-use an opportunity, at that very point in time, to knowingly act to avoid abandonment, *while that goal can still be accomplished.*

"In light of the above findings and discussion, Respondent's assertion that K.S.A. 82a-718(b) should be applied retroactively becomes moot." (Emphasis added.)

The termination hearing occurred a week after the denial of the Trustees' motion to dismiss. Harris was called by DWR to explain his analysis in the verified report. Marlin Hawley, who appeared pro se with Dennis Erkenback, his tenant, offered testimony that use had occurred in 2002:

"[W]e went ahead and put in a pivot and you know . . . we took out a shelter belt. In all total, probably $70,000 worth of work. And then again, we pumped

for 2002, I think it was 180 hours, the 2003 [*sic*] the 73 plus acre-feet. During all this time, you know we thought we was doing what we were supposed to be doing and it seems that you know everything was riding along real well."

Hawley acknowledged, however, that he did not have rebuttal evidence for the years of nonuse prior to 2002.

Following the hearing, the DWR hearing officer issued written recommendations to the chief engineer containing proposed findings of fact and conclusions of law. She found no due and sufficient cause for the nonuse for 31 successive years (1971 through 2001) and for 11 successive years (1959-1969). She found that the earlier 11-year period did not count toward abandonment and termination per subsection (c) of K.S.A. 2005 Supp. 82a-718. Her recommendations, including the proposed order of termination of the water right under 82a-718, were adopted by the chief engineer on April 19, 2004.

The Trustees timely petitioned the Secretary of Agriculture for administrative review based on lack of notice under 82a-718(b). The Secretary issued an order denying administrative review, making the chief engineer's order the final agency action. In denying review, the Secretary stated:

"The provisions of K.S.A. 2003 Supp. 82a-718(b) are clear and unambiguous; the Chief Engineer was not required to give notice to the holders of water rights for which five or more successive years of non-use had occurred prior to July 1, 1999, the effective date of the statute. Therefore, the Secretary can find no basis, under the uncontested facts of this case, on which to review the Pre-Hearing Order."

The Trustees timely filed a petition for judicial review in the Republic County District Court. The district court heard arguments and on November 19, 2004, entered judgment in favor of the Trustees. It found that compliance with the notice provision of subsection (b) was a condition precedent to an abandonment and termination proceeding, that the DWR had failed to provide the Trustees with the required notice, and that the DWR's termination of the Trustees' water right should be set aside. In so finding, the district court stated that K.S.A. 2005 Supp. 82a-718 is both substantive in extending the nonuse period from 3 to 5 years and procedural in requiring notice after 3 successive years of nonuse.

DWR timely appeals.

## ANALYSIS

Issue: *Is notice under K.S.A. 2005 Supp. 82a-718(b) a condition precedent to termination of a water right pursuant to K.S.A. 2005 Supp. 82a-718(a)?*

*Standard of Review*

Proceedings initiated by the chief engineer to declare abandonment and termination of water rights pursuant to K.S.A. 2005 Supp. 82a-718 are subject to review in accordance with the provisions of the Kansas Administrative Procedure Act. See K.S.A. 2005 Supp. 82a-1901(a). A resultant order of the Secretary of Agriculture is subject to review in accordance with the KJRA. See K.S.A. 2005 Supp. 82a-1901(b). Our standard of review is statutorily defined by the KJRA. *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger,* 276 Kan. 232, 245, 75 P.3d 226 (2003). Under K.S.A. 77-621(c)(4), a court may grant relief if an agency wrongfully interprets and applies the law.

On appeal, we exercise the same statutorily limited review of the agency's action as does the district court, *i.e.,* " 'as though the appeal had been made directly to this court.' " 276 Kan. at 245. The party asserting the agency's action is invalid bears the burden of proving the invalidity. 276 Kan. at 245 (citing K.S.A. 77-621[a][1]). As a result, the Trustees, as the petitioners for review to the district court, retain the burden of proving DWR's statutory interpretation was erroneous.

Resolution of the present issue necessitates interpretation of K.S.A. 2005 Supp. 82a-718, part of the Kansas Water Appropriation Act, K.S.A. 82a-701 *et seq.* As we stated in *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger,* 276 Kan. at 247:

' "Interpretation of a statute is a question of law. [Citation omitted.] Special rules apply, however, when considering whether an administrative agency "erroneously interpreted or applied the law":

' "The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction . . . [I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review. . . . [However,] [t]he determination of an administrative body as to

questions of law is not conclusive and, while persuasive, is not binding on the courts." [Citation omitted.]'

Deference to an agency's interpretation is especially appropriate when "the agency is one of special competence and experience." [Citation omitted.] However, the final construction of a statute always rests with the courts. [Citations omitted.]' "

### Discussion

DWR argues that based upon the plain language of the statute, notice of the permit holder's opportunity to avoid loss of his or her water right under subsection (b) is only necessary after 3 successive years of reported nonuse, but before 5 successive years of nonuse. Accordingly, where, as here, 31 successive years of nonuse occurred, no notice need be given except, under subsection (a), of the abandonment and termination hearing. Because the statutory language is clear, there is no need to apply the rules of construction. DWR contends in the alternative that if ambiguity exists and rules of statutory construction are used, then retroactive application of subsection (b) is improper.

The Trustees respond that application of the rules of statutory construction to subsection (b) demonstrates that the notice is required for all abandonment and termination proceedings undertaken after (b) was passed by the legislature in 1999. Moreover, the notice requirements are substantive and remedial, requiring that they be applied retroactively.

Our analysis starts with the statutory language. For a number of years prior to 1999, K.S.A. 82a-718 stated:

"All appropriations of water must be for some beneficial purpose. Every water right of every kind shall be deemed abandoned and shall terminate when without due and sufficient cause no lawful, beneficial use is henceforth made of water under such right for *three* successive years. Before any water right shall be declared abandoned and terminated the chief engineer shall conduct a hearing thereon in accordance with the provisions of the Kansas administrative procedure act. Notice shall be served on the user at least 30 days before the date of the hearing.

"The verified report of the chief engineer or such engineer's authorized representative shall be prima facie evidence of the abandonment and termination of any water right." (Emphasis added.) K.S.A. 82a-718 (Furse).

In 1999, 4 years before DWR initiated abandonment and termination proceedings against the Trustees' permit No. 1575, sev-

eral revisions were made to K.S.A. 82a-718. L. 1999, ch. 122, sec. 1. First, the former statute was labeled subsection (a), the statutory period of nonuse before termination was extended from 3 to 5 successive years, and a change was made not relevant to the issues in this case. Second, the revision added a notice to the user (holder of the water right) warning of his or her reported nonuse for 3 successive years, and advising of his or her opportunity to avoid termination of the right by either establishing use within 5 successive years or demonstrating why certain of these years of nonuse were because of "due and sufficient cause." These provisions were labeled subsection (b) and, as previously set forth, provide as follows:

> "(b) When no lawful, beneficial use of water under a water right has been reported for three successive years, the chief engineer shall notify the user, by certified mail, return receipt requested, that: (1) No lawful, beneficial use of the water has been reported for *three* successive years; (2) if no lawful, beneficial use is made of the water for *five* successive years, the right may be terminated; and (3) the right will not be terminated if the user shows that for one or more of the *five* consecutive years the beneficial use of the water was prevented or made unnecessary by circumstances that are due and sufficient cause for nonuse, which circumstances shall be included in the notice." (Emphasis added.) K.S.A. 2005 Supp. 82a-718(b).

Finally, another new subsection—(c)—was added, which essentially removed from DWR's consideration a water right holder's successive years of nonuse provided they all occurred before 1990. It also established, however, that successive years of nonuse were considered if they began before 1990 and continued thereafter. Subsection (c) states as follows:

> "The provisions of subsection (a) shall not apply to a water right that has not been declared abandoned and terminated before the effective date of this act if the five years of successive nonuse occurred exclusively and entirely before January 1, 1990. However, the provisions of subsection (a) shall apply if the period of five successive years of nonuse began before January 1, 1990, and continued after that date." K.S.A. 2005 Supp. 82a-718(c).

*Background on Kansas water use*

Before analyzing the statute and the parties' arguments, some background is helpful. Kansas started as a riparian doctrine state

for surface water and as an absolute ownership doctrine state for groundwater. Under these doctrines, both of which are based on land ownership next to the water source, water rights are generally not lost solely by failure to use the water. Peck and Owen, *Loss of Kansas Water Rights for Non-Use*, 43 Kan. L. Rev. 801, 802 (1995).

Although Kansas had several statutes dealing with "prior appropriation" for water rights before the Kansas Water Appropriation Act, since the Act's adoption in 1945 the state has clearly followed that doctrine. While the Act acknowledged vested rights, *i.e.*, those in existence at the time the Act became effective, it also created a permit system for acquiring water appropriation rights based upon "first in time, first in right." 43 Kan. L. Rev. at 805. Pursuant to the Act, water rights are considered real property. See K.S.A. 2005 Supp. 82a-701(g). However, the appropriation does not constitute absolute ownership of the water; the right remains subject to the principle of beneficial use. Hutchins, The Kansas Law of Water Rights 55 (1957). "One of the basic attributes of the prior appropriation system of the Western states, where water is scarce, is that holders of water rights who fail to use the rights lose the rights." 43 Kan. L. Rev. at 801.

This court addressed the Act in *F. Arthur Stone & Sons v. Gibson*, 230 Kan. 224, 630 P.2d 1164 (1981):

> "The appropriation doctrine is based upon the premises [sic] that all unused water belongs to all of the people of the state. The first person to divert water from any source and use it for beneficial purposes has prior right thereto. In other words, first in time, first in right. This doctrine is said to reward development by giving the early appropriator the fruits of his industry. The rule gives greater certainty of rights while affording a more flexible administration of the law and encourages free enterprise by protecting a developer's investment. *It discourages waste of a valuable resource and distributes the resource in response to demonstrated need*." (Emphasis added.) 230 Kan. at 229.

The *Stone* court elaborated upon the Act's purpose and the legislature's fundamental change in its approach to water law rights:

> " ' "All water within the state of Kansas is hereby dedicated to the use of the people of the state, subject to the control and regulation of the state in the manner herein provided." This is the heart of the statute [K.S.A. 82a-701 *et seq.*] . . . . It forms the basis for a different approach to the solution of questions concerning water rights than we have had in some of our opinions. *Heretofore we have ap-*

*proached the questions largely on the basis of individual interest alone. Under this declaration and other provisions of the act we now approach them upon the basis of the interest of the people of the state* without losing sight of the beneficial use the individual is making or has the right to make of the water.' " (Emphasis added.) 230 Kan. at 231 (quoting *State, ex rel. v. Knapp,* 167 Kan. 546, 555, 207 P.2d 440 [1949]).

See also *Williams v. City of Wichita,* 190 Kan. 317, 339, 374 P.2d 578 (1962) (unused water should not be held in perpetuity for a common-law owner who may never have use for it).

Although Kansas has had a significant water use permit system since 1945, Peck and Owen opine that a question exists whether the Act makes Kansas an "abandonment" or a "forfeiture" state. Their article presents arguments on both sides of the issue but offers no ultimate conclusion. 43 Kan. L. Rev. at 820-828. They do, however, state the two concepts' fundamental differences: "Under Western water law, water rights abandonment differs from water rights forfeiture in one main regard: abandonment requires that the holder have intent to lose the water right for non-use, while forfeiture can result even when the holder does not intend to give up the right." 43 Kan. L. Rev. at 820; see also Tarlock, Law of Water Rights and Resources § 5:87, p. 5-154 (2005 Supp.) ("Abandonment is defined as the intentional relinquishment of a known right in contrast to forfeiture which is defined as the involuntary loss of a right due to the failure to comply with statutory conditions for the enjoyment of a right.") Peck and Owen specifically observe that "[f]orfeiture has been a statutory concept in which the legislature sets forth a predetermined time limit for non-use that will result in the loss of the water right, regardless of intent." 43 Kan. L. Rev. at 820.

Because the Act's fundamental nature is of assistance in deciding the issues in the instant case, we will consider it. As discussed below, however, the general *label* to identify how a water right is lost under the Act is secondary to exactly *how* the right is lost. Stated another way, it makes no real difference whether one labels ours a forfeiture statute or an abandonment statute because the legislature has clearly defined how and when the water right is terminated: by 5 successive years of unexcused nonuse. K.S.A.

2005 Supp. 82a-718(a). But if a label is desired by some, we conclude, as an alternative basis for our determination, that the legislature has created an act of forfeiture, not abandonment.

## *The loss of a Kansas water right*

Our analysis starts with the basics. In *Texaco, Inc. v. Short,* 454 U.S. 516, 70 L. Ed 2d 738, 102 S. Ct. 781 (1982), where the United States Supreme Court analyzed an Indiana statute concerning loss of severed mineral interests, the Court approvingly quoted from *Hawkins v. Barney's Lessee,* 30 U.S. 457, 8 L. Ed. 190 (1831). There the Court stated:

"The right to appropriate a derelict is one of universal law, well known to the civil law, the common law, and to all law: it existed in a state of nature, and is only modified by society, according to the discretion of each community. What is the evidence of an individual having abandoned his rights or property? *It is clear that the subject is one over which every community is at liberty to make a rule for itself . . . .*" (Emphasis added.) 30 U.S. at 467.

As set forth in *Short,* the *Hawkins* court went on to observe:

"In the early settlement of the country, the man who received a grant of land and failed, at first in three, and afterwards in five years, to seat and improve it, was held to have abandoned it: it received the denomination of lapsed land, was declared to be *forfeited* (Mercer's Abr.); and any one might take out a grant for it. . . . *Forfeiture* is the word used in the old laws, and *forfeiture* is that used in the [state] compact, and the term is correctly applied; since it supposes a revesting in the commonwealth." 30 U.S. at 467-68; see 454 U.S. at 527 n.19.

In summary, the Court 175 years ago recognized that the community could, and did, make a rule that if a man merely failed to meet certain conditions it established, *e.g.,* to seat (Black's Law Dictionary 894 [8th ed. 2004] defines seated land as occupied or cultivated) and to improve his government-granted land within a specified period of time, by operation of community law he "was held to have abandoned it." 30 U.S. at 468. His actual intent was irrelevant. By operation of community law, the property was labeled as lapsed and then legally declared to be "forfeited" to the State, *i.e.,* returned so that another might apply to the government for its use.

The Kansas Legislature, as our "community," has done the same thing. Through its passage of the Act, the legislature has changed common-law rights to water use and created a permit system based upon appropriation. More important, as discussed below, it has also effectively eliminated the need for DWR to prove the "actual intent" element found in the common-law definition of "abandon." See *U.S.D. v Baker*, 269 Kan. 239, 243, 6 P.3d 848 (2000) (Kansas Legislature can change common law).

As the United States Supreme Court explained in *Short*, 454 U.S. at 526, "[J]ust as the State may create a property interest that is entitled to constitutional protection, it has the power to condition the permanent retention of that property right *on the performance of reasonable conditions that indicate a present intention to retain the interest.*" (Emphasis added.) See *In re Waters of Manse Spring*, 60 Nev. 280, 287, 108 P.2d 311 (1940) ("Water being state property, the state has a right to prescribe how it may be used, and the legislature has stated that the right of use may be obtained in a certain way. The state, having a right to designate the method of appropriation, may also provide how long water may be permitted to run idly by and not be beneficially used."); see also *Van Slooten v. Larsen*, 410 Mich. 21, 51-52, 299 N.W.2d 704 (1980) (within legislature's power and experience to change common-law definition of abandonment and to conclude that owners who have not developed, transferred, or recorded their severed mineral interests for over 20 years have abandoned them).

As support of the Kansas Legislature's modification of the common law's approach to abandonment, we first examine the operative statute, K.S.A. 2005 Supp. 82a-718(a), which states in relevant part:

"All appropriations of water must be for some beneficial purpose. Every water right of every kind shall be deemed abandoned and shall terminate when without due and sufficient cause no lawful, beneficial use is henceforth made of water under such right for five successive years."

Stated another way, if for 5 successive years water (1) has not been lawfully and beneficially used and (2) its nonuse has been unexcused by due and sufficient cause, the right "shall be deemed abandoned and shall terminate."

What did the legislature mean by this phrase? The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *State v. Denney*, 278 Kan. 643, 650, 101 P.3d 1257 (2004). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *State v. Marsh*, 278 Kan. 520, Syl. ¶ 18, 102 P.3d 445 (2004). This means that "[w]hen a statute is clear and unambiguous, the court must give effect to the statute as written, and there is no need to resort to statutory construction." *State v. Sodders*, 255 Kan. 79, Syl. ¶ 4, 872 P.2d 736 (1994); see also *In re Mary P.*, 237 Kan. 456, 459, 701 P.2d 681 (1985) (when statute clear and unambiguous, no room left for statutory construction). As this court stated in *State v. Haug*, 237 Kan. 390, 391-92, 699 P.2d 535 (1985):

"The statute is clear and unambiguous in this regard and is not open to construction or speculation as to the legislative intent behind it. It has long been the rule in Kansas that in determining *whether a statute is open to construction*, or in construing a statute, *ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous language.* [Citations omitted.]" (Emphasis added.)

As previously stated, to abandon is defined as the intentional relinquishment of a known right. We next observe, however, that "deem" is defined as "establish[ing] a legal fiction . . . by 'deeming' something to be what it is not," or "treat[ing] something as if it were really something else." Black's Law Dictionary 446 (8th ed. 2004). In other words, to "treat as if" abandoned eliminates the need to prove any of the traditional elements of abandonment, *e.g.*, intent to relinquish. As in the *Hawkins* example, the right is abandoned by operation of law when required conditions have not been met.

Additionally, "shall" is defined as "[h]as a duty to; more broadly, is required to." Black's Law Dictionary 1407 (8th ed. 2004). While it has also been defined to mean directory, as opposed to mandatory, the former is related to matters of mere form, not substance

as here. See *Wilcox v. Billings*, 200 Kan. 654, 657, 438 P.2d 108 (1968) (whether a statute is directory or mandatory depends upon whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form). "Terminate" is defined as "[t]o put an end to; to bring to an end." Black's Law Dictionary 1511 (8th ed. 2004). Consequently, if the water permit holder simply cannot establish either lawful and beneficial use, or excused nonuse, for 1 of 5 successive years, then under the statute's plain language the water right ends.

Although not necessary to our resolution of the issue, we observe that our holding is also consistent with, and supported by, several other grounds. See *Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 460-64, 124 P.3d 57 (2005) (without determining statute ambiguous, discussed its purposes and some legislative history).

First, in the seven other statutes in which the Kansas Legislature has used "shall be deemed abandoned," the phrase's plain language has served to automatically terminate certain rights as a matter of law, irrespective of one's actual intent. In oil and gas law, "[a] salt solution mining well shall be deemed abandoned if no person is legally responsible for causing the pollution or hazard . . . or . . . is adjudicated to be insolvent" and the Secretary may then plug the well. K.S.A. 55-1,120(a)(3) and (b)(2). In the context of impounded personal and motor carrier vehicles, the vehicles "shall be deemed abandoned" and may be disposed of by the person in possession if the owner, *inter alia*, simply fails to take possession within 30 days following the expiration of the impoundment period. K.S.A. 2005 Supp. 8-1021; K.S.A. 2005 Supp. 66-1,129a(d).

Additionally, in the context of local governments attempting to make annual tax levies for local improvements, three different statutes provide: (1) that the government must pass a resolution; (2) that if a protest petition is filed, the government must notify the county election officer of the date of a special election; and (3) that failure to so notify within the prescribed statutory period requires that "the resolution shall be deemed abandoned and no like resolution shall be adopted" by the government for 9 months. See K.S.A. 3-316 (county commission airport purposes); K.S.A. 72-8801(a) (board of education capital outlay); K.S.A. 72-6433(b)

(board of education local option budget). Finally, in the context of the distribution of property in the course of a demutualization, rehabilitation, or relegated reorganization of an insurance company, specified distributable property "shall be deemed abandoned" under certain conditions; by contrast, in the absence of those conditions, that same property is merely "presumed abandoned." K.S.A. 58-3935 (a)(15).

Similarly, in the context of appellate review this court itself has used the plain language of "deemed abandoned" as conclusive disposition of certain issues and has refused to consider them. The disposition occurs because of a party's failure to satisfy a certain court-established condition, irrespective of the party's actual intent. See, *e.g., Titterington v. Brooke Insurance,* 277 Kan. 888, Syl. ¶ 3, 89 P.3d 643 (2004) ("A point raised only incidentally in a party's brief but not argued in the brief is deemed abandoned."). Moreover, in this area we have expressly used "deemed abandoned" interchangeably with "is abandoned." See, *e.g., McGinley v. Bank of America, N.A.,* 279 Kan. 426, 444, 109 P.3d 1146 (2005) (an issue not briefed by the appellant is "*deemed* waived or abandoned"), and *Bergstrom v. Noah,* 266 Kan. 847, 873, 974 P.2d 531 (1999) ("Where the appellant fails to brief an issue, that issue *is* waived or abandoned.").

Second, in numerous other provisions where the legislature has used "deemed," Kansas appellate courts have treated the plain language as dispositive. For example, in the context of criminal law, where by legislative definition (K.S.A. 21-3401[b]) felony murder is the killing of a human being in the commission of an inherently dangerous felony, K.S.A. 2005 Supp. 21-3436(a) and (b) provide that "[a]ny of the following felonies *shall be deemed* an inherently dangerous felony." (Emphasis added.) Without more, we have typically held that the killing of a human being during the mere commission of such a felony is conclusively a felony murder. *State v. Giddings,* 226 Kan. 110, 112, 595 P.2d 1115 (1979) (" 'To apply the felony murder rule, it is only necessary to establish that defendants committed a felony inherently dangerous to human life and that the killing took place during the commission of the felony.' "). Correspondingly, in requests for admissions in Chapter 61 civil

actions the legislature has provided that "[e]ach of the matters requested shall be deemed to be admitted . . . unless within 15 days after the request is served" the party to whom the request is directed submits either a denial or written objection. K.S.A. 61-3101(b). Our appellate courts have treated late responses as not only conclusively establishing the matter requested but also as judicially untouchable. See *Berkshire Aircraft, Inc. v. AEC Leasing Co.*, 32 Kan. App. 2d 427, 431, 84 P.3d 608 (2002) (due to lack of any authority as found in K.S.A. 60-236, under K.S.A. 61-3101 court has no power to allow admission to be amended or withdrawn; because responses were late they were "deemed admitted").

Similarly, in the context of Supreme Court rules, this court has itself used "deemed," as in "deemed admitted," to be conclusive disposition of certain issues. See Supreme Court Rule 212(d) (2005 Kan. Ct. R. Annot. 297) (if respondent fails to file exceptions to hearing panel report within 20 days of mailing, report's findings of fact "shall be deemed to be admitted" and the matter proceeds directly to court's disciplinary phase); see also Supreme Court Rule 141 (2005 Kan. Ct. R. Annot. 205) (by failing to respond in 21 days to summary judgment motion, "the opposing party shall be deemed to have admitted the uncontroverted contentions of fact set forth in the memorandum or brief of moving party"). Accordingly, in *Money v. Ft. Hays State Univ. Endowment Ass'n*, 31 Kan. App. 2d 322, 64 P.2d 458, *rev. denied* 276 Kan. 969 (2003), because a party was late in responding to the summary judgment motion, the Court of Appeals held the "district court therefore *properly deemed the Association's statement of uncontroverted facts controlling* and adopted those facts as the basis for its decision." (Emphasis added.) 31 Kan. App. 2d at 325-26.

For all of these reasons, we conclude that the legislature's chosen language "shall be deemed abandoned and shall terminate" clearly means that by operation of law those water rights shall terminate, regardless of a party's intent. By using "shall be deemed abandoned" the legislature has made the intent inquiry moot because it has essentially supplied that element—just as it supplies premeditation in felony murder. See *State v. Altum*, 262 Kan. 733,

738, 941 P.2d 1348 (1997) (homicide while committing a felony is the statutory equivalent to the premeditation essential to murder in the first degree).

We further conclude that the legislature's chosen language which follows "shall be deemed abandoned and shall terminate," *i.e.*, "when [1] without due and sufficient cause [2] no lawful, beneficial use is henceforth made of water under such right for 5 successive years" clearly means that unless the water right holder demonstrates satisfaction of one of those two conditions at the hearing, those rights shall terminate by operation of law. In the further words of the statute, the right is then "abandoned and terminated" by declaration. See K.S.A. 2005 Supp. 82a-718(a). *Cf. Short*, 454 U.S. at 538 n.34 (State may legitimately treat a severed mineral interest that has been unused for statutory 20-year period and for which owner has not bothered to file statutorily required statement of claim "as worthless and abandoned").

*The Kansas water right is "forfeited"*

As mentioned, while a label is unnecessary, we conclude the Kansas Legislature has created an act of forfeiture for several reasons.

### 1. Case law from other jurisdictions with similar water use statutes

In *In re Waters of Manse Spring*, 60 Nev. at 287, the Nevada Supreme Court interpreted its water use statute essentially as one of forfeiture, despite the statute's use of both "abandonment" and "forfeiture." See 43 Kan. L. Rev. at 824. The statute, § 8 of the water law (§ 7897, N.C.L. 1929), stated in part:

" 'And in case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for beneficial purposes for which right exists during any five successive years, [1] the right to use *shall be considered as having been abandoned*, and [2] they *shall forfeit* all water rights, easements and privileges appurtenant thereto.' " (Emphasis added.) 60 Nev. at 285-86.

K.S.A. 2005 Supp. 82a-718(a) states with identical structure and in synonymous language that when without due and sufficient cause no lawful, beneficial use is made of water under the right for 5 successive years then the right "[1] shall be deemed abandoned

and [2] shall terminate." In short, Nevada's "shall be considered as having been abandoned" is synonymous with Kansas' "shall be deemed abandoned" and Nevada's "shall forfeit" is synonymous with Kansas' "shall terminate."

Correspondingly, in *Rencken v. Young*, 300 Or. 352, 711 P.2d 954 (1985), the Oregon Supreme Court acknowledged that its water use statute spoke in terms of "abandonment of water right," but nevertheless characterized it as a forfeiture statute. Or. Rev. Stat. 540.610(1) (1985) provided:

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state. Whenever the owner of a perfected and developed water right ceases or fails to use the water appropriated for a period of five successive years, [1] the right to use *shall cease*, and [2] the failure to use *shall be conclusively presumed to be an abandonment* of water right." (Emphasis added.)

As mentioned, K.S.A. 2005 Supp. 82a-718(a) provides that when water has been unused for 5 successive years, then the right "[1] shall be deemed abandoned and [2] shall terminate." While Oregon reverses Kansas' sequence of phrases, Oregon's "shall cease" is synonymous with Kansas' "shall terminate" and its "shall be conclusively presumed to be an abandonment" is virtually synonymous with, if not arguably weaker than, Kansas' "shall be deemed abandoned."

Similarly, in *Carrington v. Crandall*, 65 Idaho 525, 532, 147 P.2d 1009 (1944), the Idaho Supreme Court concluded that although its statute designated the loss of the water rights as "abandonment," it was "in fact a statutory forfeiture," so an actual intent to abandon the right was not required as long as the nonuse occurred throughout the statutory period of 5 years. The court recognized there is "another kind of abandonment which is *actual*, not dependent upon length of time, the essential element of which is *intent*" to relinquish. 65 Idaho at 532.

The Idaho water law statute provided: "All right to the use of water in Idaho acquired or provided by law or otherwise . . . *shall be lost and abandoned* by a failure for the term of five years to apply it to the beneficial use for which it was appropriated." (Emphasis added.) 65 Idaho at 526.

While Idaho reversed Kansas' sequence of terms, Idaho's "shall be lost and abandoned" is synonymous with Kansas' "shall be deemed abandoned and shall terminate."

These cases demonstrate that despite a legislature's use of "abandonment" language, when a party fails to meet legislative conditions to retain the water right, *i.e.*, because of nonuse during the statutory period, the right could be "abandoned" by operation of law. In short, termination of the right could be accomplished, irrespective of intent.

### 2. Property rights case law and "shall be deemed abandoned"

In *Van Slooten v. Larsen*, 410 Mich. 21, 299 N.W.2d 704 (1980), the Michigan Supreme Court addressed its dormant mineral act, which provided that unless the owners of severed oil and gas interests took certain actions within 20 years, those interests "shall . . . be deemed abandoned" and the interests "deemed abandoned" shall vest in the owner of the surface. The mineral interest owners challenged the statute as unconstitutional, arguing, among other things, that it created an arbitrary and unreasonable "conclusive presumption of abandonment." The mineral interest owners argued that "abandonment" required an intent to relinquish as well as acts putting that intention into effect:

"Defendants claim that the actions listed in the act are not the only means by which one can possess or indicate ownership of a severed mineral estate and that the failure to do any of the acts specified in the statute is not necessarily determinative of an owner's intent to abandon. Because abandonment is concerned with the owner's intent to abandon, due process forbids the taking of property on the basis of a permanent and irrebuttable presumption of abandonment which is 'not necessarily or universally true in fact.' " 410 Mich. at 50.

The Michigan Supreme Court handily rejected this argument:

"Contrary to defendants' arguments, *the act does not create any evidentiary presumption.* None of the provisions of the act purport to be concerned with the owner's *intent* to abandon [citation omitted]. Rather, the act is designed to increase the marketability and development of severed mineral interests *by creating a rule of substantive law which requires owners to undertake minimal acts indicative of ownership at least every 20 years.*" (Emphasis added.) 410 Mich. at 50-51.

The court observed in a footnote: "The same result could have been achieved without any reference to the concept of abandonment by '*deeming* the owner of the surface estate to have marketable record title to the severed interest' at the expiration of the statutory period." (Emphasis added.) 410 Mich. at 51 n.24.

Similarly, none of the provisions of the Kansas Act, including "shall be deemed abandoned," purport to be concerned with the water right holder's intent to abandon. Rather, the Act creates a rule which requires holders to undertake minimal acts indicative of ownership, *e.g.*, use, at least once every 5 years.

The United States Supreme Court provides further support for our conclusion in the previously discussed case of *Short*, 454 U.S. 516. *Short* involved a challenge to the constitutionality of an Indiana statute regarding loss of severed mineral interests which, like the water rights in the instant case, were considered property rights — but vested property interests entitled to the same protection as are fee simple titles.

The statute provided: "Any interest in coal, oil and gas, and other minerals, shall, if unused for a period of 20 years, be extinguished, unless a statement of claim is filed in accordance with section five hereof [*sic*], and the ownership shall revert to the then owner of the interest out of which it was carved." Ind. Code § 32-5-11-1 (1976).

In upholding the statute, the Court held: "We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right *on the performance of reasonable conditions that indicate a present intention to retain the interest*." (Emphasis added.) 454 U.S. at 526.

After a review of Supreme Court case law, the *Short* Court then concluded: "In each case, the Court upheld the power of the State to condition the retention of a property right upon the performance of an act within a limited period of time. *In each instance, as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse.*"(Emphasis added.) 454 U.S. at 529.

The Indiana statute at issue did not provide that 20 years of nonuse and failure to file a statement of claim caused the right to be "abandoned" but rather that it was to be "extinguished." However, the Court's language clearly reveals it regarded the two concepts as equivalent under Indiana's statutory scheme. For example, the Court stated: (1) "Each of the actions required by the State to avoid an *abandonment* of a mineral estate furthers a legitimate state goal." (Emphasis added.) 454 U.S. at 529. (2) "In ruling that private property *may be deemed to be abandoned* and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect." (Emphasis added.) 456 U.S. at 530. (3) "We have concluded that the State *may treat* a mineral interest that has not been used for 20 years and for which no statement of claim has been filed *as abandoned.*" (Emphasis added.) 456 U.S. at 530. (4) "The first question raised is simply how a legislature must go about advising its citizens of actions that must be taken to avoid *a valid rule of law* that a mineral interest that has not been used for 20 years *will be deemed abandoned.*" (Emphasis added.) 456 U.S. at 531. (5) "The State legitimately *may treat* a mineral interest that has been unused for the statutory period and for which the owner has not bothered to file a statement of claim as worthless *and abandoned.*" (Emphasis added.) 454 U.S. at 538 n.34. While the Court refers to the "assumption of abandonment," it is clear from the phrase's context and the references cited above that the phrase is used as a conclusively-established abandonment, *i.e.*, per the self-executing feature of the Mineral Lapse Act. 454 U.S. at 535 n.28.

In summary, these excerpts support our conclusion that the United States Supreme Court approved the Indiana Legislature's scheme of extinguishing vested property rights by the rightholder's mere failure to meet legislatively set conditions and that this failure could be treated by the State as an "abandonment." Actual intent was irrelevant.

3. The 1999 amendment to K.S.A. 82a-718

In discussing the arguments for characterizing K.S.A. 82a-718 as a forfeiture statute, Peck and Owen opined the forfeiture char-

acterization is consistent with the fundamental premise of the Act and the prior appropriation doctrine:

"That premise is that active use of water is rewarded and protected. The prior appropriation system rewards active efforts to bring water under control. The doctrine places the burden on the user to earn the right to use water; . . . .

"The prior appropriation doctrine adopted by the Kansas Water Appropriation Act is development-oriented; it does not reward passive behavior . . . .

"Thus, it is consistent to view the *conduct* of the water right holder, rather than his *intent*, as the controlling measure of whether a water right is maintained. This view ensures that *all aspects of a water right's existence* are equally dependent upon the *conduct* of the water right holder." (Emphasis added.) 43 Kan. L. Rev. at 824-25.

Because Peck and Owen's article preceded the 1999 amendment to K.S.A. 82a-718, arguably their statement is no longer valid. After review of the amendment, however, we hold that it is. The language of the 1999 amendment, particularly the provisions in subsection (b) regarding notice and increase of the permitted nonuse period from 3 to 5 years, can be readily characterized as merely extending the time before a water right is terminated for nonuse without intent to abandon, *i.e.*, forfeited. For example, the New Mexico Supreme Court previously held that its statute, N.M. Stat. Ann. § 75-5-26 (1953), was one of forfeiture because it required only 4 successive years of nonuse and no intent to relinquish. See *State ex rel. Reynolds v. South Springs Co.*, 80 N.M. 144, 452 P.2d 478 (1969). When the statute was replaced by one that also required the State give notice after the 4 years and granted a 1-year grace period during which use could be recommenced, the legislature still denominated the statute as one of "forfeiture." See N.M. Stat. Ann. § 72-5-28 (2005).

We also observe that the notice provision of the new subsection (b) makes no mention whatsoever of the word "abandon" or in any way suggests a required intent to relinquish the right. Rather, like the original notice provision in the Act (now subsection [a]), the notice provision in (b) connects termination of the water right entirely to failure to meet one of two simple conditions: failure to use, or to establish excusable nonuse, for 5 successive years. This is forfeiture. See Tarlock, Law of Water Rights and Resources §

5:87, p. 5-154 (2005 Supp.) (forfeiture is involuntary loss of right due to failure to comply with statutory conditions for enjoyment of right).

Accordingly, for all the reasons amply set forth above, we hold that the statute is one of forfeiture.

*Analysis of the instant case*

With this background in mind, we turn to the instant case. It is clear that there was no due and sufficient cause for nonuse from 1971 through 2001, a total of 31 successive years. Accordingly, DWR argues that because the period is greater than 5 years, under the plain and unambiguous language of the statute, the chief engineer's ability to terminate the Trustees' water right under subsection (a) is subject only to the notice of hearing under that subdivision and is not subject to the notice of one's opportunity to avoid termination contained in subsection (b). It asserts that subsection (b) only applies to water rights involving between 3 and 5 years of nonuse. As mentioned, the Trustees argue that the rules of statutory construction require notice be given to them of the opportunity to cure their nonuse through use or excuse, even after 31 successive years of nonuse.

As previously acknowledged, the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted, which means that "[w]hen a statute is clear and unambiguous, the court must give effect to the statute as written, and there is no need to resort to statutory construction." *State v. Sodders*, 255 Kan. 79, Syl. ¶ 4, 872 P.2d 736 (1994).

Consequently, analysis of this particular dispute begins with a plain reading of the statute. According to the plain language in subsection (a), the water right "*shall* be deemed abandoned and *shall* terminate when without due and sufficient cause no lawful, beneficial use is henceforth made of water under such right for five successive years." (Emphasis added.) By contrast, subsection

(b) plainly states that the chief engineer shall provide notice "[w]hen no lawful, beneficial use of water under a water right has been reported for three successive years."

In addition to the notice advising of the 3 years of reported nonuse (see [b][1]), the plain language of (b)(2) and (b)(3) requires that the notice also advise that termination may be averted by establishing either lawful and beneficial use, or excused nonuse, for at least 1 year of the 5-year period. Specifically, under these subsections the chief engineer shall notify the user that "if no lawful, beneficial use is made of the water for five successive years, the right may be terminated" and that "the right will not be terminated if the user shows that for one or more of the five consecutive years the beneficial use of the water was prevented or made unnecessary by circumstances that are due and sufficient cause for nonuse, which circumstances shall be included in the notice." K.S.A. 2005 Supp. 82a-718(b)(2) and (3).

Given these provisions, the hearing officer concluded:

"The plain language of the statute [subsection (b)] indicates notice shall be sent to those who have reported exactly three years of non-use, such notice to be sent at the point at which only three years of non-use have been reported, *so that the user may avoid termination for abandonment in the future, for five years of non-use without due and sufficient cause.*" (Emphasis added.)

The hearing officer essentially held that because nonuse had already occurred for more than 30 consecutive years, subsection (b)'s notice after 3 years of nonuse advising of one's opportunity to avoid termination through use, or excused nonuse, during a 5-year period simply did not apply. We agree. Stated another way, we hold that nowhere in the plain and unambiguous language of the statute is there legislative intent to require the chief engineer to comply with the notice requirements of subsection (b) before he pursues termination of a water right under the authority of subsection (a), *i.e.*, after 5 or more successive years of nonuse have occurred.

Although not necessary to our resolution of the issue, we observe that our holding is also consistent with, and supported by, several other grounds.

First, our holding is consistent with the premise upon which the entire Act is built and upon which it has been applied for over 60 years: Because all water within the state is dedicated to the use of the people of the state, subject to the control and regulation of the state, then holders of water rights who fail to use the rights lose the rights. See K.S.A. 82a-702; 43 Kan. L. Rev. 801, 805; *cf. F. Arthur Stone & Sons v. Gibson*, 230 Kan. 224 (appropriation doctrine is based upon premise that all unused water belongs to all people of the state and distributes it in response to demonstrated need). Specifically, under the language of K.S.A. 2005 Supp. 82a-718 analyzed earlier, ours is a statute where the legislature has not only created the water use right, but has also expressly conditioned the retention of that right on the performance of one of two specific conditions. Under the Kansas statutory scheme, mere unexcused nonuse for 5 successive years ends the right. Here, the Trustees had already inexcusably failed to use the water for 31 successive years.

Second, there are other safeguards in the Act available to a water right holder so he or she does not always lose the right if it is not used in the prescribed number of successive years. As mentioned, under K.S.A. 2005 Supp. 82a-718(b), a user is entitled to notice after 3 successive years that the right may be terminated for continued nonuse. Also in subsection (b), the user may demonstrate good reason for the nonuse or establish use within the 5 successive years. Finally, and more important under the instant case's facts, subsection (c) contains additional protection. If all of the water right holder's years of nonuse, regardless of amount, had occurred before 1990, those years cannot be considered by DWR in the termination decision. A water right holder receives a slate wiped clean. Indeed, in the present case, the hearing officer expressly did not consider the 11 successive years of nonuse from 1959 through 1969. Given the Act's basic premise—use it or lose it, regardless of intent—it is unlikely that the legislature intended to bestow yet another opportunity for relief under circumstances like those of the instant case.

Finally, even if we were to determine the statutory language to be ambiguous, we agree with the hearing officer that application

of the rules of statutory construction leads to the same conclusion. As we stated in *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002): "As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation." If under subsection (a) a water right *shall* terminate after 5 successive years of unexcused nonuse, then a notice given under subsection (b) warning the owner of the potential loss of a water right after 31 successive years of nonuse, unless the owner shows use or legitimate excuse during 1 of the last 5 successive years, is useless and meaningless. As the hearing officer aptly put it, "[t]he notice described in subsection (b) could not help an owner whose five-year period was already over." Stated another way, because subsection (b) is designed to allow avoiding termination for successive years of nonuse, and a water right holder can avoid by demonstrating use, or by giving valid reasons for the nonuse, during the 5 successive years, then a rightholder is not entitled to a notice when 31 successive years of nonuse have already occurred.

Likewise, we agree with the hearing officer that given our conclusions, the Trustees' argument that K.S.A. 2005 Supp. 82a-718(b) should be applied retroactively becomes moot.

Lastly, the Trustees argue that termination of their water right would be unfair and inequitable after all these years. The equities are not entirely on their side, however, and their argument must fail. Six other holders of water rights in the area wrote DWR in May 2003 of their concerns about allowing Trustees to operate under permit No. 1575, specifically complaining of the permit use's direct impact on "seniority concerns" and "minimum desirable streamflow calculations." Both concepts affect access to water.

A senior water right is a right with a priority date earlier than a junior right. Peck, *Property Rights in Groundwater-Some Lessons from the Kansas Experience*, 12 Kan. J.L. & Pub. Pol'y 493, 494 n.6 (Spring 2003). When these area holders' rights are junior to the Trustees', allowing the Trustees' senior rights to be exercised after many years of nonuse can result in a reduction of the amount of water which the junior holders may use in the future and, consequently, a reduction in the amount to which they very well could

have become accustomed, if not dependent upon. See K.S.A. 82a-707(b) (date of priority of appropriation right determines right to divert and use water when supply not sufficient to satisfy all water rights that attach to it); K.S.A. 82a-707(c) (as between persons with appropriation rights, the first in time is the first in right). See, *e.g.*, K.S.A. 82a-703a (chief engineer shall withhold from appropriation amount of water deemed necessary to establish and maintain desired minimum streamflow set by legislature on particular watercourses).

In conclusion, DWR's interpretation of the statute is correct. The decision declaring the Trustees' water right to be "abandoned and terminated" is affirmed. The district court's order reversing the decision of the hearing officer and chief engineer is reversed.

LOCKETT, J., Retired, assigned.