No. 98,750

FRICK FARM PROPERTIES, L.P., *Appellant*, v. THE STATE OF
KANSAS, DEPARTMENT OF AGRICULTURE, DIVISION OF WATER
RESOURCES, *Appellee*.

(216 P.3d 170)

Opinion filed September 25, 2009.

*David M. Traster*, of Foulston Siefkin LLP, of Wichita, argued the cause and was on the brief for appellant.

*Brett W. Berry*, of the Kansas Department of Agriculture, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This is an appeal under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. See L. 2009, ch. 109, sec. 23-30. Frick Farm Properties, L.P. (Frick Farm) challenges an administrative order by the Department of Agriculture Division of Water Resources (DWR) terminating a water right. Both the district court

and the Court of Appeals affirmed the agency's action. See *Frick Farm Properties v. Kansas Dept. of Agriculture*, 40 Kan. App. 2d 132, 190 P.3d 983 (2008). Our jurisdiction arises from K.S.A. 20-3018(b) (review of a Court of Appeals' decision). We affirm.

For the reasons stated, we reject Frick Farm's argument that the agency imposed an impermissible evidentiary burden during the administrative hearing where it was determined the water right was abandoned. After carefully reviewing the record, we hold the agency offered sufficient evidence in its case in chief on all three statutory elements required to terminate this water right under K.S.A. 2008 Supp. 82a-718(a): (1) nonuse; (2) for 5 successive years; and (3) without due and sufficient cause. Therefore, we do not decide Frick Farm's claim that the agency improperly promulgated K.A.R. 5-7-1(d), the regulation dealing with the burden of proof on the due and sufficient cause element. We further find substantial evidence, when viewed in light of the record as a whole, supports DWR's action.

*Factual and Procedural Background*

In 2002, Frick Farm acquired real property and the appurtenant water rights from Bernard J. Debes, who was an uncle of a Frick Farm principal. Prior to the purchase from Debes, Frick Farm claims it contacted DWR and was told the water right was in good standing. But after the purchase, and as part of the due diligence for a possible sale to a third party, a forfeiture issue arose as to whether Debes used his water right consistently over several years. State law provides a water right is forfeited if not used for 5 or more consecutive years without due and sufficient cause. K.S.A. 2008 Supp. 82a-718(a); *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 625, 132 P.3d 870 (2006) ("the Act creates a rule which requires holders to undertake minimal acts indicative of ownership, *e.g.*, use, at least once every 5 years"). To explain our dispute, we must review how Debes' water right began and describe its use or lack of use.

In 1970, Debes applied for a permit to appropriate water for beneficial use under the Kansas Water Appropriations Act of 1945. See L. 1945, ch. 390, sec. 1. The application was approved in 1972,

assigned File No. 17,125, and given a March 20, 1970, priority date. When approving this water right, the agency's documentation advised Debes: (1) He must maintain records from which the quantity of water diverted each year may be determined; (2) He must furnish those records annually to the chief engineer; and (3) His failure to comply with the permit's terms, conditions, and limitations would result in forfeiture.

In 1972, when Debes filed the notice of completed work that his permit required, he agreed to submit annually to DWR sufficient documentation showing the quantity of water actually diverted. To facilitate this reporting, DWR supplied Debes with a pumping time record book to log his irrigation activity. The agency's documentation again advised Debes to furnish this information so it could be officially noted "to protect your right."

Ten years later, DWR issued Debes a Certificate of Appropriation for Beneficial Use of Water, which again reminded Debes to supply his water usage documentation, with the additional admonition that his appropriation right "shall be deemed abandoned and shall terminate when without due and sufficient cause, no lawful beneficial use is made of water under this appropriation for three (3) successive years." The law changed in 1999 to extend this time to 5 successive years. L. 1999, ch. 122, sec.1.

As reflected above, Debes knew from the time he applied for his water right in 1972 that he was expected to maintain and provide adequate annual water use documentation, which he agreed to do. In 1988, this became a statutory obligation when K.S.A. 82a-732 was enacted and began requiring water right holders to submit annual water use reports to DWR. L. 1988, ch. 395, sec. 1(a). The record reflects Debes filed water use reports from 1985 through 1991, and then again from 1996 through 2002. For the years 1992 through 1995, the agency erroneously sent reporting forms for Debes' water right to the wrong person and Debes supplied no information on his own.

Beginning in 1990, the annual reporting forms Debes completed stated in all capital letters: "IF YOU DID NOT USE WATER, YOU MUST REPORT THE REASON FOR NON-USE TO HELP PROTECT YOUR WATER RIGHT." With the exception

of 1985 and 1998, Debes reported no water use on the annual forms applicable to any year in controversy here. Frequently, Debes gave no explanation for not using the water right, despite the administrative caution to do so, and he left that portion of the form blank.

The question whether this water right was abandoned arose in 2003 when Frick Farm considered selling some of the property it acquired from Debes. The prospective purchaser wanted verification the water right was in good standing, so Frick Farm and DWR began exchanging information to fill in gaps left by Debes' inadequate submissions to the agency.

In October 2004, agency staff prepared a report alleging 19 consecutive years of nonuse beginning in 1985. Corrine Curran, a DWR environmental scientist, authored the report. She later testified her assignment was to determine if due and sufficient cause existed for any nonuse she discovered. To do this, she relied on four information sources: (1) the water use reports prepared by Debes and Frick Farm already on file with the agency; (2) the Farm Service Agency's Report of Acreage identifying whether crops produced on the property were irrigated or non-irrigated; (3) the United States Department of Agriculture (USDA) annual records showing what percentage of a particular crop was irrigated in the county; and (4) a March 23, 2003, letter submitted by Frick Farm, which was prepared with Debes' assistance, justifying the nonuse, as well as supplying additional information regarding the water right. From this, Curran concluded the water right was abandoned. Her report was verified, under oath, by Bruce Falk, DWR Water Commissioner for the Stafford Field Office.

The following month, Frick Farm received notice of an administrative hearing to determine whether the water right was abandoned and should be terminated. See K.S.A. 2008 Supp. 82a-718(a). The hearing convened in March 2005. DWR's chief engineer presided. Both the agency and Frick Farm were represented by counsel.

DWR called Curran as its only witness. She testified about her investigation, her professional and academic qualifications to conduct the investigation, and her conclusions. Curran said she could

not ascertain due and sufficient cause for nonuse of the water right in any year since 1985 based on the reasons specified in K.A.R. 5-7-1 despite searching DWR's files and outside information sources. The verified report was admitted into evidence, along with various other exhibits. These exhibits included DWR's file on this water right containing all the information Debes or Frick Farm provided. The verified report was admitted without objection.

Karen Frick testified on Frick Farm's behalf to explain the non-use for some, but not all, years in question. She claimed there was water use in 1985, 1993, and 1998. She did not dispute that water was not used in the other years. She summarized why she believed the water right was not abandoned. First, she said in years when Debes' wheat crop froze, there was no reason to water a crop "that wasn't there." Second, she said in years when rainfall was adequate, there was no need to irrigate. And, third, she said in some years Debes did not irrigate because he could make more money grazing cattle.

She also testified about conversations with Debes after there were questions from DWR regarding the water right's possible abandonment. She described how Debes reliably recalled what he planted in various years and why he had not irrigated. She also explained how Frick Farm compiled information from outside sources to fill in the informational gaps and had Debes review that information. She described the exchanges with Debes in this way:

"He knew what crops he had done and why he had done what. And if he—if you didn't need water, you didn't use it. He was a conservationist. I mean, he was just a good farmer. He told us what crops he planted and he could tell you how many acres. And when I had gone to the ASCS office and he was correct, it was a little bit surprising to me."

Based on what Frick Farm learned from area agricultural agencies, and the conversations with Debes, Frick Farm prepared a March 25, 2003, letter supplying rainfall amounts, crop plantings, and other information believed to be relevant. Karen Frick also testified her husband, Kent Frick, visited the DWR field office in Stafford to inquire about the water right's status and left there believing the water right was in good standing. But Karen Frick could not say when this conversation occurred, whom he spoke

with, or what he was told that caused him to believe there was no problem with the water right.

In January 2006, the chief engineer issued an initial order terminating the water right. The chief engineer concluded there were two time periods of continuous nonuse without due and sufficient cause. The first was from 1985 to 1991—7 years of consecutive nonuse. The second was from 1995 to 2002—8 years of consecutive nonuse.

Based on the above, the chief engineer summarized his conclusions from the evidentiary record as follows:

"Based on the Verified Report, which is prima facie evidence, and the testimony and evidence presented at the hearing there has been no lawful, beneficial use of water as authorized by Water Right, File No. 17,125 from 1985 through 1991 . . . and from 1995 through 2002. . . . Frick Farm Properties, L.P. has not met its burden of showing the existence of due and sufficient cause for the non-use of water in these years. Therefore, Frick Farm Properties, L.P. has failed to show that Water Right, File No. 17,125 should not be declared abandoned and terminated pursuant to K.S.A. 2004 Supp. 82a-718."

This initial order was finalized by the Secretary of Agriculture in accordance with K.S.A. 2008 Supp. 82a-1901. Frick Farm filed two petitions for further administrative review with the Secretary of the Department of Agriculture. The second was prompted by a concern the first was procedurally defective. Both were denied.

With that, Frick Farm sought judicial review of the agency's action in district court. We summarize Frick Farm's arguments in those proceedings as: (1) The agency improperly placed the burden of proof on Frick Farm; (2) The agency did not establish water was not used in 1985 or 1995; (3) The agency did not establish there was no due and sufficient cause for nonuse in most of the years in question; (4) The agency improperly relied on county-wide statistical data rather than planting rates on the farm in question; (5) The agency had no statutory authority to promulgate K.A.R. 5-7-1(d); and (6) The agency failed to establish a lack of due and sufficient cause in 1990, which makes evidence of all prior years irrelevant under K.S.A. 2008 Supp. 82a-718(c).

The district court rejected each argument and upheld the agency's termination decision. Frick Farm filed a timely appeal to

the Kansas Court of Appeals, which also affirmed the termination. *Frick Farm Properties*, 40 Kan. App. 2d 132. Frick Farm sought review from this court, which was granted.

## Analysis

Proceedings brought by the chief engineer to terminate water rights under K.S.A. 2008 Supp. 82a-718 are subject to review by the Secretary of Agriculture under the Kansas Administrative Procedure Act. K.S.A. 2008 Supp. 82a-1901(a); *Hawley*, 281 Kan. at 611. A final order from the Secretary is subject to judicial review under the KJRA. K.S.A. 2008 Supp. 82a-1901(b). Judicial review of a state administrative agency action is controlled by the KJRA. L. 2009, ch. 109, sec. 23-30. The KJRA defines the appropriate standard of review for this court and it enumerates eight circumstances in which a court may grant relief. K.S.A. 77-621(c). An appellate court exercises the same statutorily-limited review of an agency's action as does the district court, *i.e.*, as though the appeal was made directly to the appellate court. *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005).

At the outset, we must comment on Frick Farm's failure to identify which provisions in K.S.A. 77-621(c) it invokes as its grounds for relief. Such specification is important because a court reviewing an administrative agency's action may grant relief only if it determines one or more of those provisions is violated. K.S.A. 77-621(c); *Cf. Kingsley v. Kansas. Dept. of Revenue*, 288 Kan. 390, 406-07, 204 P.3d 562 (2009) ("it is a better practice for the language in the petition for judicial review to mirror the statutory basis for the specific relief requested."); *Pittsburg State University v. Kansas Bd. of Regents*, 30 Kan. App. 2d 37, 45, 36 P.3d 853 (2001), *rev. denied* 273 Kan. 1036 (2002) ("specificity in pleading under the KJRA is necessary to give focus to the asserted agency error and to give the reviewing court a proper understanding of the type of relief sought").

Frick Farm's failure to articulate to the district court, the Court of Appeals, or this court the statutory grounds for relief it believes are applicable to this controversy has made it much more difficult for this court to apply the facts, which bridge a 32-year time span,

to Frick Farm's various arguments sprinkled throughout the pleadings. Our review of the district court and the Court of Appeals' decisions demonstrates those courts also labored under this debilitation. Accordingly, we will need to more expansively describe below additional facts and statutory background that appear applicable to the contentions raised in order to ensure we fulfill our obligation to the parties.

First, we distill the following principal issues from Frick Farm's briefs: (1) whether K.A.R. 5-7-1(d) impermissibly imposed the burden of proof on Frick Farm; and (2) whether there was substantial competent evidence to support the chief engineer's findings that there were at least two 5-year periods in which the water right was not used and there was no due and sufficient cause for that nonuse. There are subissues lurking beneath both concerns that we will address in context.

Next, we pause to detail the year-by-year evidentiary record regarding the two consecutive time periods of nonuse without due and sufficient cause found by the chief engineer because they are DWR's factual basis for terminating Frick Farm's water right.

## 1985 to 1991

During this first time period, Debes stated in his annual reports filed with DWR that he irrigated only in 1985. He also reported he planted wheat in that year. But for the other 6 years, Debes reported no water use. As importantly, for 5 of those 6 years of nonuse, he gave no reason for not using his water right. In addition, for 1986, 1987, and 1988, he did not report what, if any, crops he planted. For 1989, Debes explained on his annual report to DWR that his nonuse was because "[the] wheat froze."

As to the water use Debes claimed in 1985, the verified report by DWR concluded Debes mistakenly attributed irrigation from another water right he held (File No. 35,112) as his use on the water right at issue, File No. 17,125. But Frick Farm argued the annual water report should be accepted on its face as the water use credited to File No. 17,125. As alternative arguments, Frick Farm claimed there was due and sufficient cause in 1985 for nonuse because there was adequate rainfall for the reported wheat

crop and it was more economical not to irrigate. The chief engineer disagreed with these contentions, holding:

"The evidence does not support a conclusion that irrigation occurred [in 1985]. The water usage reported by Mr. Debes, 149 acre-feet, was significantly greater than the quantity authorized under File No. 17,125, but was consistent with the authorized use of water under File No. 35,112. Based on these facts, more likely than not, Mr. Debes inadvertently reported his water usage under File No. 35,112 on the line pertaining to File No. 17,125, and there was no usage of water under File No. 17,125 in 1985. This is a simple and common mistake that occurs when more than one water right is reported on a single water use report.

"Mr. Debes reported he did not irrigate [under File No. 17,125] in 1985 because he grew wheat and pastured it in the spring. This statement, alone, is not evidence of circumstances that, in fact, prevented irrigation or made irrigation unnecessary. K.A.R. 5-7-1(b). If the mere planting and pasturing of wheat prevented irrigation from occurring or made irrigation unnecessary then the obvious conclusion is that dryland wheat was planted. Making a decision to produce a crop that does not normally require full or partial irrigation did not prevent Mr. Debes from irrigating or make it possible for him to produce a normally irrigated crop without the need for irrigation. He chose not to irrigate, therefore, irrigation would not have occurred under any circumstances.

"The Fricks have offered no evidence of any circumstances that prevented Mr. Debes from irrigating or made irrigation unnecessary in 1985, although they suggest Mr. Debes grazed cattle in some years because it was more profitable than producing irrigated crops. If that is the case here, then that was an economic decision. Economic reasons are not listed in K.A.R. 5-7-1(a) as a circumstance considered as due and sufficient cause for non-use. Making a decision not to irrigate for economic reasons could not have prevented Mr. Debes from irrigating or made it possible to produce a normally irrigated crop without irrigation. Again, Mr. Debes simply chose not to irrigate, and the criteria of K.A.R. 5-7-1(b) have not been satisfied."

As for the years 1986, 1987, and 1988, Debes reported no water use, and failed to state what crop, if any, was planted. The verified report by Curran could determine no basis to find due and sufficient cause for the nonuse in these years. Frick Farm asserted the crops Debes produced in 1986 through 1988 did not require irrigation. But as to these years, the chief engineer concluded:

"The mere statement that the crops did not require irrigation provides no evidence of the existence of circumstances that prevented irrigation or made irrigation unnecessary. K.A.R. 5-7-1(b). In her testimony Mrs. Frick suggested rainfall was adequate in some years in which crops were not irrigated. Natural precipitation can constitute due and sufficient cause for not irrigating if crops

were produced that 'normally' require full or partial irrigation. K.A.R. 5-7-1(a)(1). The Fricks failed to produce evidence to show what crops were produced from 1986 to 1988 and have not shown that due and sufficient cause existed. K.A.R. 5-7-1(d)."

For 1989, Debes reported no water use on his annual forms, instead stating his wheat crop froze. The verified report noted this explanation conflicts with the reason provided by Frick Farm, which contended the reason for nonuse was adequate rainfall for the crop grown that year. But in the verified report, Curran determined the conflict did not matter because under either explanation, it would be necessary to have planted an irrigated crop. She explained that USDA National Agricultural Statistics Service information showed wheat was not a normally-irrigated crop in Pawnee County in 1989 and that less than a quarter of the county's total wheat crop was irrigated that year. Curran's verified report concluded that adequate moisture or rainfall to produce a crop that was not normally irrigated that year was not due and sufficient cause for nonuse.

In resolving the conflict about the reason Debes' water authority was not used in 1989, the chief engineer concluded Debes' more contemporaneous annual report form stating his crop froze was more credible than Frick Farm's after-the-fact claim of adequate rainfall. The chief engineer then stated:

"The mere fact the wheat crop froze is not evidence that the freeze, in fact, prevented irrigation from occurring or made irrigation unnecessary in 1989. K.A.R. 5-7-1(b). For example, if Mr. Debes planned to produce dryland wheat, no irrigation would have occurred regardless of the freeze. There simply is no evidence in the record to support a conclusion that the freeze prevented Mr. Debes from irrigating or made irrigation unnecessary, and the Fricks [have] not shown that due and sufficient cause existed. K.A.R. 5-7-1(d)."

In 1990, Debes reported no water usage on his annual report form and provided no reason for that nonuse. He also did not report what, if any, crop he planted that year. Curran's verified report noted this lack of information and then described her unsuccessful efforts to ascertain the necessary information from other sources. Curran's report concluded: "[I]t is not possible to determine whether a normally irrigated crop was planted and whether

adequate moisture or rainfall prevented or made irrigation of this crop unnecessary." Frick Farm asserted the crops Debes produced in 1990 did not require irrigation because of adequate rainfall in May, June, and July, but it provided no further information about whether the crop produced normally required irrigation.

The chief engineer determined there was no factual basis to conclude due and sufficient cause existed for nonuse in 1990. In discounting Frick Farm's explanation that the unknown crop in 1990 did not require irrigation, the chief engineer wrote: "The mere statement that the crop did not require irrigation provides no evidence of the existence of circumstances that prevented irrigation or made irrigation unnecessary."

In 1991, Debes did not report any irrigation, nor did he report what, if any, crop was planted. Curran determined the crop planted that year was rye for grazing. She based this on records maintained by the USDA National Agricultural Statistics Service. She noted rye was not a normally-irrigated crop in Pawnee County that year. The verified report also states that information supplied by Frick Farm showed the 1991 rye crop as non-irrigated. The verified report then concludes: "[A]dequate moisture or rainfall to produce a crop that is not normally irrigated is not considered due and sufficient cause for non-use . . . for 1991." Frick Farm contended at the hearing that there was adequate moisture or rainfall, so irrigation was not required. The chief engineer concluded from the record:

"Making a decision to produce a dryland crop is not a circumstance that prevented Mr. Debes from irrigating or made it unnecessary to irrigate. He could have irrigated had he simply chosen to do so. Mr. Debes chose to produce crops that did not require irrigation, therefore irrigation would not have occurred under any circumstances."

We turn next to the second period of nonuse determined by the chief engineer, from 1995 to 2002.

## 1995 to 2002

Before addressing these years individually, it should be noted Frick Farm argued Debes' poor health justified nonuse for all years

after 1994. The chief engineer found this was not a sufficient reason for nonuse, stating:

"Although it appears Mr. Debes's [*sic*] never fully recovered his health after 1994, no evidence was presented to show it was reasonable for Mr. Debes to simply stop irrigating. For example, there was no testimony or evidence to show Mr. Debes could not have gotten help to irrigate the farm or could not have found a tenant who would irrigate after 1994."

In 1995, as mentioned previously, there was an administrative error and DWR did not send Debes the annual reporting form for File No. 17,125. In the verified report, Curran observed Frick Farm offered supplemental information that the crop planted that year was non-irrigated and sought to excuse the nonuse by alleging there was adequate moisture. The verified report concluded: "So again, adequate moisture or rainfall to produce a crop that is not normally irrigated is not considered due and sufficient cause for non-use."

The chief engineer agreed with the verified report's conclusions about 1995. The chief engineer noted the Farm Service Agency's reports for that year indicated Debes produced non-irrigated crops. Dismissing Frick Farm's argument, the chief engineer determined no irrigation would have occurred even if rainfall was adequate to produce an irrigated crop. Thus, the chief engineer concluded, rainfall in 1995 did not prevent irrigation from occurring or make irrigation unnecessary.

For 1996, 1997, 1998, 1999, 2000, and 2001, Debes failed to report any water usage and did not provide any reason for the nonuse. He also did not identify what, if any, crop he planted. Frick Farm claimed adequate moisture justified the nonuse in all of these years. In her verified report, Curran noted the USDA National Agricultural Statistic Service's information that either wheat or silage was planted on the property in all of these years. She concluded neither silage nor wheat was a normally irrigated crop in the county, and Frick Farm did not provide any information showing it planted an irrigated wheat or silage crop.

Based on federal Farm Service Agency reports showing Debes produced non-irrigated crops in 1996, 1997, 1998, 1999, 2000, and 2001, the chief engineer determined Debes likely produced non-

irrigated crops in those years. As a result, the chief engineer concluded no irrigation would have occurred, even if rainfall was adequate to produce an irrigated crop.

In 1998, there again was an issue as to whether Debes inaccurately reported water usage for water right File No. 35,112 under File No. 17,125. Curran reviewed this, stating in her verified report that meter reading comparisons for File No. 35,112 in 1997 and 1999 "completely match up with the information reported [under File No. 17,125] in 1998." Curran also noted the reported acres for 1998 did not match the permit for File No. 17,125, but did match File No. 35,112. From this, the chief engineer concluded: "More likely than not, Mr. Debes did not divert water under this water right in 1998."

For 2002, there was no water use reported on the annual form, no reason provided for the nonuse, and no declaration regarding whether a particular crop was planted. Frick Farm claimed milo was planted and argued adequate moisture made irrigation unnecessary. In her verified report, Curran noted the crop information supplied by Frick Farm indicated the milo planted was a non-irrigated crop. Curran corroborated this by referring to USDA National Agricultural Statistics Service information specific to Pawnee County, which showed less than a quarter of the county's total milo crop was irrigated that year. The chief engineer agreed with Curran and concluded no irrigation occurred in 2002, even if rainfall was adequate to produce an irrigated crop.

With this additional detail, we can discuss Frick Farm's arguments.

### (1) Did K.A.R. 5-7-1(d) impermissibly impose on Frick Farm the burden of proof?

Frick Farm mounts various attacks regarding K.A.R. 5-7-1(d) and the burden of proof it claims is required in a forfeiture hearing. Reduced to its essence, Frick Farm alleges DWR developed an administrative process for the termination of water rights under K.S.A. 2008 Supp. 82a-718 that requires the agency to do no more than show 5 or more successive years of nonuse. Frick Farm argues the water right holder is left with the entire evidentiary obligation

to demonstrate there was due and sufficient cause for nonuse. Frick Farm has the burden in challenging the agency's action on this basis. K.S.A. 77-621(a)(1) ("[t]he burden of proving the invalidity of agency action is on the party asserting invalidity"); see *Trees Oil Co. v. Kansas Corporation Comm'n*, 279 Kan. 209, 225-26, 105 P.3d 1269 (2005).

We find the record does not support the factual predicate for Frick Farm's claim, so this issue is not properly presented. A discussion of the statutory framework governing the requirements for maintaining a water right, a discussion about what constitutes prima facie evidence, and a review of what the agency actually did in this case is necessary to explain our conclusion.

Under K.S.A. 82a-701(g), a "water right" is defined as follows:

"[a]ny vested right or appropriation right under which a person may lawfully divert and use water. It is a real property right appurtenant to and severable from the land on or in connection with which the water is used and such water right passes as an appurtenance with a conveyance of the land by deed, lease, mortgage, will, or other voluntary disposal, or by inheritance."

A state may create a property right and then place conditions on the retention of that right. See *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 617, 132 P.3d 870 (2006). All water within the state of Kansas is dedicated to the use of the people of the state and is subject to control and regulation in the manner prescribed. 281 Kan. at 614.

The water right at issue here is a water appropriation right, as opposed to a vested right. The term "appropriation right" is defined in K.S.A. 82a-701(f) as being

"a right, acquired under the provisions of [the Act], to divert from a definite water supply a specific quantity of water at a specific rate of diversion, provided such water is available in excess of the requirements of all vested rights that relate to such supply and all appropriation rights of earlier date that relate to such supply, and to apply such water to a specific beneficial use or uses in preference to all appropriations right of later date."

Once created, water appropriation rights are subject to loss or forfeiture if an owner fails to use water for a period of 5 successive years without "due and sufficient cause." K.S.A. 2008 Supp. 82a-718(a) provides in pertinent part:

"All appropriations of water must be for some beneficial purpose. Every water right of every kind shall be deemed abandoned and shall terminate when without due and sufficient cause no lawful, beneficial use is henceforth made of water under such right for five successive years."

As this court observed in *Hawley,* "it makes no real difference whether one labels ours a forfeiture statute or an abandonment statute because the legislature has clearly defined how and when the water right is terminated: by 5 successive years of unexcused nonuse." 281 Kan. at 615.

By administrative regulation, DWR articulated over the years examples of what it finds to be due and sufficient cause for nonuse. Today, the regulation lists 10 potential justifications, including a discretionary one for case-specific circumstances when the chief engineer determines a manifest injustice would result if the water right were deemed abandoned. K.A.R. 5-7-1(a)(10). But despite the open-ended nature as to what may be a due and sufficient cause for nonuse, K.A.R. 5-7-1(b) explains that "[i]n order to constitute due and sufficient cause for nonuse of water, the reason purporting to constitute due and sufficient cause shall have in fact prevented, or made unnecessary, the authorized beneficial use of water."

K.S.A. 2008 Supp. 82a-718(a) states further that "[t]he verified report of the chief engineer or such engineer's authorized representative shall be prima facie evidence of the abandonment and termination of any water right."

Against this backdrop, the interpretation of K.S.A. 2008 Supp. 82a-718(a) requires a further understanding about prima facie evidence. Looking first to the statute, we note the prima facie evidence language was included in the original statute enacted in 1945. L. 1945, ch. 390, sec. 19.

Prima facie evidence is evidence which, if left unexplained or uncontradicted, would be sufficient to sustain a judgment on the issue which it supports, but it may be contradicted by other evidence. *Robbins v. City of Wichita,* 285 Kan. 455, 470, 172 P.3d 1187 (2007); *State v. Kriss,* 232 Kan. 301, 305, 654 P.2d 942 (1982) (citing *Van Brunt, Executrix v. Jackson,* 212 Kan. 621, 512 P.2d 517 [1973]). It is a rule of evidence governing the sufficiency of

the evidence required to submit a case to the trier of fact. *Kriss*, 232 Kan. at 305.

This court referenced the respective evidentiary burdens under 82a-718(a) in *Hawley*. The issue before the *Hawley* court was whether the notice provisions in 82a-718(b) were a condition precedent to water right termination. 281 Kan. at 604. But the court also discussed 82a-718(a), and while this discussion is not controlling, it is persuasive. The *Hawley* court observed:

" 'The legislature's chosen language which follows "shall be deemed abandoned and shall terminate," *i.e.*, when [1] without due and sufficient cause [2] no lawful beneficial use is henceforth made of water under such right for 5 successive years' *clearly means that unless the water right holder demonstrates satisfaction of one of those two conditions at the hearing*, those rights shall terminate by operation of law. In the further words of the statute, the right is then "abandoned and terminated" by declaration. See K.S.A. [2008] Supp. 82a-718(a). [Citation omitted.]' " (Emphasis added.) 281 Kan. at 622.

Thus, it is apparent from the statute and our decision in *Hawley* that at some point in the proceedings the water right holder must offer rebutting evidence on the required statutory elements pertaining to water right termination to protect the right. Under the statutory scheme, that point in time is after DWR submits a properly prepared verified report.

In 1994, DWR amended K.A.R. 5-7-1(d), establishing the evidentiary burden at the water right hearing. It stated that once the chief engineer submits a verified report establishing nonuse for 3 or more successive years the burden shifts to the water right owner to show there have not been 3 or more successive years of nonuse without due and sufficient cause. K.A.R. 1996 Supp. 5-7-1(d). It was amended again in 2004 to provide:

"When a verified report of the chief engineer, or the chief engineer's representative, is made a matter of record at a hearing held pursuant to K.S.A. 82a-718 . . . that establishes nonuse of a water right for five or more successive years, the water right owner shall have the burden of showing that there have not been five or more successive years of nonuse without due and sufficient cause." K.A.R. 2005 Supp. 5-7-1(d).

Frick Farm objects to the regulation's language that seemingly limits DWR's evidentiary burden to establishing nonuse for 5 or

more successive years. More specifically, Frick Farm objects to the regulation's language requiring the water right owner to establish there have not been 5 years or more continuous nonuse without due and sufficient cause. Before the burden shifts to it, Frick Farm argues, DWR must establish a prima facie case for all three elements required to find a water right abandoned—(1) nonuse; (2) for 5 successive years; and (3) without due and sufficient cause. Frick Farm claims DWR did not establish a prima facie case as to all three elements before shifting the burden to Frick Farm to prove there was due and sufficient cause for the nonuse. Frick Farm assails the agency's promulgation of K.A.R. 5-7-1(d) as proof that the agency did nothing more in this case but offer evidence of 5 or more years of nonuse.

The problem with Frick Farm's argument is that we are not presented with those facts in this case. As can be seen in the detailed factual recitation above, DWR could have established nonuse for 5 or more successive years just by submitting the annual water use forms prepared and filed by Debes—but DWR did not stop there. Instead, the agency took additional steps in its investigation for, and in preparation of, the verified report contemplated by K.S.A. 2008 Supp. 82a-718(a).

These steps included: (1) the DWR field office notifying Frick Farm of the nonuse problem and offering it the opportunity early in the process to supply DWR with additional information; (2) receiving from Frick Farm a March 25, 2003, letter prepared with the assistance of Debes (approximately 20 months prior to his death), which furnished supplemental information about crop planting, rainfall, and other operational details; (3) assigning Curran, an environmental scientist with DWR, the task of reviewing the water right's use, comparing those facts against all three statutory requirements, and then analyzing those facts against the applicable criteria set out in K.A.R. 5-7-1(a) to reach a conclusion regarding compliance; (4) allowing Curran to base her work on various informational sources, including the water use reports prepared by Debes and Frick Farm, federal agricultural agency records, as well as the information compiled by Frick Farms with Debes' assistance; (5) submitting Curran's draft report to Frick

Farm for additional input before it was finalized; (6) having Curran state her conclusions and opinions based on her investigation at the hearing; and (7) having the information and opinions prepared by Curran verified under oath by DWR's water commissioner from the local field office.

The resulting verified report, coupled with Curran's testimony at the hearing, which was subject to cross-examination by Frick Farm's counsel, constituted DWR's initial evidentiary presentation. Taken as a whole, DWR's evidence satisfied all three statutory elements necessary to justify the chief engineer's determination that the water right was forfeited under K.S.A. 2008 Supp. 82a-718(a). DWR made this presentation before Frick Farm presented any evidence that may have disputed any claimed nonuse in any particular year or justified any nonuse by the due and sufficient causes itemized in K.A.R. 5-7-1(a).

We find the agency's verified report established a prima facie case that no beneficial use was made of this water right for at least 5 consecutive years and that due and sufficient cause did not exist to excuse this nonuse. Whether DWR could have taken a shorter route by presenting far less evidence—focused only on nonuse for 5 or more successive years—is a hypothetical argument because the agency did not place the initial burden on Frick Farm to establish any element required to terminate Frick Farm's water right. We decline to determine in this case, and under these circumstances, whether K.A.R. 5-7-1(d) properly states the minimum content for DWR's verified report to serve as prima facie evidence of forfeiture under K.S.A. 2008 Supp. 82a-718(a). See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, Syl. ¶ 2, 210 P.3d 105 (2009) (courts are constitutionally without authority to render advisory opinions); *Cady v. Cady*, 224 Kan. 339, 345, 581 P.2d 358 (1978) ("Courts do not render advisory opinions on abstract questions of law unless there is an actual dispute between the parties.").

Parenthetically, we note in reviewing the Court of Appeals' decision on this point that it did not squarely address the statutory requirements imposed on DWR to establish a prima facie case of forfeiture or whether K.A.R. 5-7-1(d) properly states the minimum

content for DWR's verified report to serve as prima facie evidence. *Frick Farm,* 40 Kan. App. 2d at 139. The Court of Appeals' decision should not be read as holding that DWR may satisfy its prima facie evidence requirement by submitting a verified report that simply shows 5 or more successive years of nonuse—and nothing more. That question is not fairly presented by the facts in this case.

As mentioned above, DWR's verified report and its evidentiary presentation addressed each of the three statutory elements required to declare a water right forfeited under K.S.A. 2008 Supp. 82a-718(a). For these reasons, we reject Frick Farm's challenge to the agency's action under K.S.A. 77-621(c) on this question.

*(2) Is there substantial evidence supporting the agency's termination of Frick Farm's water right?*

Frick Farm next argues DWR failed to establish a sufficient factual basis within the two time periods at issue to terminate Frick Farm's water rights. Specifically, Frick Farm claims: (1) DWR improperly relied upon county-wide data as evidence whether a specific crop was normally irrigated; (2) There was not substantial competent evidence demonstrating nonuse in 1995; and (3) There was not substantial competent evidence demonstrating nonuse in 1990. For the reasons stated below we disagree.

The KJRA sets the standard of review on questions of fact when reviewing an agency's actions. It allows this court to grant relief if the agency's action is "based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(c)(7). Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined. *Evenson Trucking Co. v. Aranda,* 280 Kan. 821, 836, 127 P.3d 292 (2006). An appellate court views all the evidence in a light most favorable to the prevailing party, and it does not reweigh competing evidence or assess the credibility of witnesses. 280 Kan. at 836-37. This court must accept all evidence and inferences that support or tend to support the findings as true, and this court must disregard all conflicting evidence. *Trees Oil Co.,* 279 Kan. at 226 (citing *Reed v.*

*Kansas Racing Comm'n*, 253 Kan. 602, 609-10, 860 P.2d 684 [1993].).

*(a) Was it error to consider county-wide statistical data on irrigation?*

First, Frick Farm attacks some of the evidence presented by DWR, arguing the agency inappropriately relied on county-wide statistical data rather than specific planting rates on the farm in question. This argument specifically relates to those years in which water was not used because, Frick Farm claims, there was adequate moisture. K.A.R. 5-7-1(a)(1) provides that due and sufficient cause may be shown if "[a]dequate moisture is provided by natural precipitation for production of crops *normally requiring full or partial irrigation within the region of the state in which the place of use is located.*" (Emphasis added.)

Frick Farm contends the county-wide agricultural information referenced in the verified report cannot demonstrate whether a particular planting on the subject property would have required irrigation. Frick Farm argues the only way this may be conclusively shown is by proving the crop in the field was planted at a rate that required supplemental water and not simply whether a particular crop is normally irrigated within the county. For example, Frick Farm claims a farmer might plant alfalfa at a rate of 5 pounds of seed per acre if the intention is to rely exclusively on normal rainfall, but might plant at a rate of 15 to 20 pounds of seed per acre if the intent is to irrigate that crop. In this case, when Curran identified the crop planted by Debes in a particular year, she went to government agricultural records to see what percentage of that particular crop was shown as irrigated in the county for that particular year. Based on the percentage, Curran made a judgment as to whether that crop normally required full or partial irrigation to determine if K.A.R. 5-7-1(a)(1) applied.

We find Frick Farm's argument goes more to the weight of the evidence rather than demonstrating a lack of substantial competent evidence to support the agency action. Our scope of review does not permit us to reweigh the evidence. *Evenson Trucking Co.*, 280 Kan. at 836-37. Furthermore, prima facie evidence only requires

sufficient evidence to sustain a judgment. *Robbins*, 285 Kan. at 470. To be sure, and irrespective of its precision to the actual property at issue, the county-wide agricultural information was certainly relevant to the application of K.A.R. 5-7-1(a)(1). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b).

For most years in question, Curran sought outside informational sources because Debes failed to provide even the minimal information sought on the annual water use report forms that he was required to submit to DWR by law and by his agreement with the agency. If a particular crop was planted at a rate that would normally require irrigation but irrigation was not necessary because of adequate moisture, Debes could have stated this on the form and had an obligation to do so. Regardless, if Frick Farm had evidence the crop was planted at a rate requiring irrigation, it could have argued that at the chief engineer's hearing. It failed to do this. In addition, if Frick Farm thought the failure to include this information made the verified report unreliable, it could have challenged the report's admission into evidence. It did not.

We reject Frick Farm's argument that the chief engineer erred by considering county-wide statistical data on which crops are normally irrigated when determining whether any of the reasons for nonuse enumerated in K.A.R. 5-7-1 apply. This evidence was relevant, and Frick Farm had the opportunity to rebut it with evidence of its planting rates. It simply failed to do so.

Next, Frick Farm attacks the factual findings in two years: 1995 and 1990.

*(b) Was there substantial competent evidence of nonuse without due and sufficient cause in 1995?*

In its brief, Frick Farm asserts "there is no evidence in the file that water was not used in 1995 and the lack of evidence is wholly and completely the responsibility of the agency." Frick Farm then assails the agency's determination, claiming: "The agency had an affirmative obligation to come forward with evidence of nonuse at some point during these proceedings and has wholly failed to do

so for 1995." It then argues the agency's determination for this year was based on "an assumption that no water was used in 1995."

We find this argument to be without merit. Frick Farm's March 25, 2003, letter to DWR, which was prepared with Debes' assistance before his death, expressly states irrigation was not used in 1995. The letter explains the acreage was planted in wheat, and then seeks to justify this admitted nonuse by arguing there was adequate rainfall to support that crop without irrigation. The letter even provides information regarding rainfall levels for May and June of that year in support of a due and sufficient cause argument for the nonuse under K.A.R. 5-7-1(a)(1). Indeed, the letter expressly states in reference to 1995 that "irrigation [was] not needed." This is clear evidence, taken from the information supplied by the water right holder, that the authorized irrigation was not used in 1995. Based on the record, we determine that substantial competent evidence justified the chief engineer's finding that no water was used in 1995.

### (c) Was there substantial competent evidence of nonuse without due and sufficient cause in 1990?

Frick Farm next argues the agency did not have substantial competent evidence to find Debes' nonuse in 1990 was unexcused by the factors stated in K.A.R. 5-7-1(a). As noted above, the record reflects Debes reported no water usage in 1990. He gave no reason for that nonuse on the annual report form, even though the form specifically asked him to state his reason for nonuse. In addition, Debes did not report what crop he planted that year, even though the form instructed that the reason for nonuse must be reported to protect the water right.

In the verified report, Curran noted her unsuccessful efforts to ascertain information from other sources as to what crop might have been planted. As part of the information exchange with DWR prior to preparation of the verified report, Frick Farm defended the nonuse on the basis of adequate rainfall, but did not identify the crop that was planted. The chief engineer determined there was no factual basis to conclude there was due and sufficient cause

for the nonuse in 1990. The record supports the chief engineer's determination.

The first question is what evidentiary value may be given to the fact that Debes failed to provide any explanation for his nonuse on the annual reporting forms. As noted above, in 1988, the Water Rights Appropriation Act was changed to provide as follows:

"The owner of a water right or permit to appropriate water for beneficial use, except for domestic use, shall file an annual water use report on a form prescribed by the chief engineer of the division of water resources of the state board of agriculture on or before March 1 following the end of the previous calendar year. *The report shall completely and accurately set forth such water use information as requested by the chief engineer.*" (Emphasis added.) L. 1988, ch. 395, sec. 1(a).

This language remains substantively unchanged. See K.S.A. 2008 Supp. 82a-732(a). Since 1990, the annual water use report form has asked water right holders whether water was used, and if not, why not. In some of his filings with the DWR, Debes formally agreed in writing to supply this information. Yet, in many instances and consistently over many years, Debes did not report this information, even though the law required it and he agreed to provide it.

We believe it is appropriate to give some weight to the fact that a water right holder consistently failed to supply any reason for nonuse on the annual report forms, particularly when: (1) The water right holder agreed to provide this information as a part of obtaining that water right; (2) The state law and regulation required the water right holder to provide this information; and (3) The water right holder is advised on the form itself in all capital letters that, "IF YOU DID NOT USE WATER, YOU MUST REPORT THE REASON FOR NON-USE TO HELP PROTECT YOUR WATER RIGHT."

The second question is what evidentiary value to assign to the fact that neither Frick Farm nor Debes could supply the required information when asked by DWR years later. We believe it is relevant that Frick Farm and Debes did not identify the crops planted, when they knew it was an issue, and argued adequate moisture was the reason for the nonuse. Under these circumstances, and given our statutorily-limited standard of review, we

find sufficient evidence in the record to conclude there was no justification for the nonuse in 1990.

Lastly, we note Frick Farm enumerated as an issue on appeal the following: "When evidence of the reasons for nonuse is not available to either party due to the death of a witness, may the evidence be presumed to have been in favor of forfeiture?" This is obviously a reference to Debes' death in late 2004. We point this out because Frick Farm's briefs do not specifically address this issue, other than passing references in sections of the briefs dedicated to other topics. Frick Farm also provides no legal authority in support of this identified issue.

We expect an argument identified in the issues statement of an appellate brief to be developed in a discussion section dedicated to that issue so it can be appropriately considered. This is especially true in this case, where the facts show Frick Farm worked with Debes before his death to develop responses in defense of the water right, particularly the March 25, 2003, letter to DWR. As noted above, Karen Frick even testified regarding the reliability and precision with which Debes supplied her with information. We are puzzled why Frick Farm would claim evidence of the reasons for nonuse was unavailable "to either party due to the death of a witness" when the record so clearly shows Frick Farm's collaboration with Debes in preparing the March 25, 2003, letter, which was admitted into evidence. But without more development in Frick Farm's briefs, we are left to conjecture.

To the extent Frick Farm desired to argue some legal point regarding an adverse impact from Debes' death prior to the chief engineer's hearing, we deem it waived for Frick Farm's failure to adequately address the matter. *State v. Harned*, 281 Kan. 1023, 1048, 135 P.3d 1169 (2006) (claims raised in passing without argument or citation to authority are deemed waived).

The district court's order affirming the agency action is affirmed. The Court of Appeals' decision affirming the agency action is affirmed.