NOT DESIGNATED FOR PUBLICATION

No. 120,053

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
JALYN MARIE O'MALLEY,
*Appellee*,

and

JOSEPH DOMINIC O'MALLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed November 8, 2019. Reversed and remanded with directions.

*Sara S. Beezley* and *Sarah A. Mills*, of Girard, for appellant.

*Frederick R. Smith*, of Pittsburg, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.

PER CURIAM: Joseph O'Malley appeals the district court's lack of ruling on the enforceability of the premarital agreement he entered into with Jalyn O'Malley in 1999. Joseph argues the district court erred when it failed to find whether Jalyn voluntarily executed the Agreement and failed to determine the Agreement's enforceability. We agree with Joseph and remand this matter to the district court for additional findings as more fully explained below. Reversed and remanded with directions.

1

Jalyn and Joseph O'Malley lived together for eight or nine years before they decided to get married. Three days before the wedding in 1999, they entered into a premarital agreement (Agreement). During the marriage they had two children. After their second child was born, Jalyn quit her full-time job to stay at home with their children.

The Agreement provided Jalyn and Joseph each possessed property they intended to keep separate from marital property, specifically identified and attached to the Agreement in Exhibits A and B. Exhibit A identified Jalyn's separate property, including a vehicle, savings, and certain household furnishings. Exhibit B identified Joseph's separate property, including a residence on a 54.9 acre tract of land in Scammon, savings, and certain farming equipment and cash crops. The Agreement further required each party to waive any right to spousal support in the event of divorce. The Agreement failed to provide how any subsequently acquired property was to be treated.

Joseph filed a petition for divorce in July 2017. In March 2018, Jalyn filed a motion to determine the scope and enforceability of the Agreement, arguing it was unenforceable because she did not receive the advice of independent counsel before signing it. See K.S.A. 2018 Supp. 23-2407(a)(1). She also argued the Agreement was unenforceable because it did not fully disclose Joseph's debts. See K.S.A. 2018 Supp. 23-2407(a)(2).

The district court conducted an evidentiary hearing on Jalyn's motion, at which Jalyn and Joseph testified about the circumstances preceding the execution of the Agreement. Jalyn testified Joseph said he would marry her only if she signed the Agreement. Joseph testified he told Jalyn he "would require a prenup before we would get married." But when Joseph's counsel asked him whether the Agreement was a

"condition precedent to getting married," he responded, "[a]bsolutely not." Joseph also testified he never told Jalyn he would not go through with the wedding if she did not sign the Agreement.

The parties also testified about whether they sought the advice of independent counsel before signing the Agreement. Joseph testified his attorney, Larry Prauser, drafted the Agreement, and he and Jalyn met with Prauser several months before their marriage to discuss the terms they wanted in the Agreement. Jalyn testified she did not receive the advice of independent counsel before signing the Agreement, but she "skimmed over" the Agreement a few days before signing it and understood its terms.

The parties testified about Jalyn's education and business experience. Jalyn testified she was a high school graduate and she lived and worked on the farm for eight or nine years before they married. The farm where Jalyn and Joseph lived included farm sheds, farm equipment, crops, and cattle. Joseph stated Jalyn "had to be aware" of his farming operation because she helped him move cattle, operate farm equipment, and "knew what the crops were." Joseph claimed Jalyn was aware he had a mortgage on his property. However, Jalyn testified she was unaware of the "specifics" of Joseph's farming operation and debts.

Jalyn testified Joseph told her she "had to quit" her full-time job after they had their second child in 2003 because "he didn't want his children to be raised by a baby-sitter." Prior to 2003, Jalyn worked full time, earning approximately $36,000 per year. During the marriage, the parties accumulated substantial farm land and farm-related equipment.

The district court made several factual statements about whether Jalyn voluntarily entered into the Agreement. It stated Jalyn did not receive the advice of independent counsel and "[i]t [was] clear from the testimony that [Jalyn] had no understanding of the

3

legal significance of the document she was signing." The district court further stated: "While the parties have capacity; and the contract was in writing and signed by the parties, there remains a question as to whether the agreement was freely and voluntarily entered into." However, the district court did not explicitly determine whether Jalyn voluntary entered into the Agreement.

Instead, the district court found the parties "abandoned" the Agreement and entered into a "post marital agreement" in 2003 when "both parties agreed that [Jalyn] would abandon her career and separate estate and would become a stay at home mom dedicated to raising a family and a family farm."

Joseph filed a motion for an amended order and an application for interlocutory appeal under K.S.A. 2018 Supp. 60-2102(c). He argued the evidence did not support the district court's ruling that the parties "abandoned" the Agreement and entered into a "post marital" agreement in 2003. The district court ruled on Joseph's application for interlocutory appeal and amended its order to include: "The enforceability of the Prenuptial Agreement . . . is a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation." However, it does not appear the ruling addressed the merits of Joseph's argument regarding the existence of the postmarital agreement.

Joseph timely filed this interlocutory appeal. See Supreme Court Rule 4.01(b) and (f) (2019 Kan. S. Ct. R. 26). This court's jurisdiction is proper. See K.S.A. 2018 Supp. 60-2102(c) (interlocutory appeal on controlling question of law in a civil case).

4

ANALYSIS

Joseph argues the district court's factual findings and legal conclusions on the Agreement's enforceability were inadequate. But at the same time, he asserts the district court found the Agreement to be "valid."

The district court has a duty to make adequate findings of fact and conclusions of law. Supreme Court Rule 165 (2019 Kan. S. Ct. R. 221). Because Joseph did not object to the district court's lack of findings and legal conclusions on the Agreement's enforceability below, this court would ordinarily presume the district court made all findings necessary to support its ruling. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). Here, however, remand is necessary because the district court's lack of findings and legal conclusions precludes meaningful appellate review. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

A premarital agreement is a contract subject to the same rules applicable to other contracts. *In re Marriage of Cutler*, No. 103,148, 2011 WL 1877703, at *4 (Kan. App. 2011) (unpublished opinion). Generally, this court exercises unlimited review over the interpretation and legal effect of written contracts. *Davis v. Miller*, 269 Kan. 732, 738, 7 P.3d 1223 (2000). Here, the enforceability of the Agreement relates to factual issues that cannot be ascertained from the written instrument. This court reviews the district court's factual findings under the substantial competent evidence standard. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 54, 392 P.3d 68 (2017). "Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009). In determining whether substantial competent evidence supports the district court's decision, this court does not reweigh evidence or make credibility determinations. 289 Kan. at 709.

Historically, the common law governed marital agreements executed before or after marriage. See *In re Marriage of Traster*, 301 Kan. 88, 96-97, 339 P.3d 778 (2014). Under the common law, a marital contract's enforceability hinged on whether its terms were just and equitable:

> "The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or overreaching. Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties." *Fincham v. Fincham*, 160 Kan. 683, Syl. ¶ 1, 165 P.2d 209 (1946).

But in 1988, the common-law analysis of premarital agreements was superseded by statute under the Kansas Uniform Premarital Agreement Act (KUPAA). See K.S.A. 2018 Supp. 23-2401 et seq.; *In re Marriage of Traster*, 301 Kan. at 97. As a result, a premarital agreement's enforceability is no longer based on the common law's just and equitable analysis. 301 Kan. at 97.

Under the KUPAA, a premarital agreement is "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." K.S.A. 2018 Supp. 23-2402(a). A premarital agreement must be in writing and signed by both parties. K.S.A. 2018 Supp. 23-2403. Parties can enter into a premarital agreement to determine how property will be held after marriage; to provide for the disposition of property upon death or divorce; and to provide for, or waive, spousal support obligations. See K.S.A. 2018 Supp. 23-2404.

Unlike a separation agreement entered into during marriage, a premarital agreement is enforceable as long as it was voluntarily executed and not unconscionable.

6

Compare K.S.A. 2018 Supp. 24-2407(a) with K.S.A. 2018 Supp. 23-2712(a). The party challenging the enforceability of the premarital agreement must prove it is unenforceable. See K.S.A. 2018 Supp. 23-2407(a). To do so, the party must show:

"(1) That party did not execute the agreement voluntarily; or

"(2) the agreement was unconscionable when such agreement was executed and, before execution of the agreement, all of the following applied to that party:

(A) Such party was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(B) such party did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(C) such party did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party." K.S.A. 2018 Supp. 23-2407(a).

In *Davis*, the Kansas Supreme Court found the "main thrust" of a district court's "voluntariness" analysis under K.S.A. 23-807(a)(1)—the predecessor of K.S.A. 2018 Supp. 23-2407(a)(1)—should be whether the parties exercised their "free choice" when they entered into the agreement. 269 Kan. at 741. Some of the factors a district court may consider include: the circumstances preceding the agreement's execution; whether the parties had the advice of independent counsel before executing the agreement; and the parties' age, education, and business experience. 269 Kan. at 741-42.

Here, the district court made several findings that could establish Jalyn did not execute the Agreement voluntarily. It found Jalyn did not receive the advice of independent counsel and "had no understanding of the legal significance of the document she was signing." The district court later stated: "While the parties have capacity; and the contract was in writing and signed by the parties, there remains a question as to whether the agreement was freely and voluntarily entered into." But ultimately, the district court

7

failed to definitively conclude whether Jalyn executed the Agreement voluntarily. If the court had determined Jalyn involuntarily executed the Agreement, the Agreement would have been unenforceable as a matter of law. See K.S.A. 2018 Supp. 23-2407(a)(1). Thus, the district court failed to complete its analysis on the Agreement's validity.

Instead, the district court ruled on an alternative basis, finding the parties "abandoned" their 1999 premarital agreement and entered into a "post marital agreement" in 2003 when "both parties agreed that [Jalyn] would abandon her career and separate estate and would become a stay at home mom dedicated to raising a family and a family farm." The KUPAA does not allow a court to disregard a premarital agreement on the basis of the parties' actions. "After marriage, a premarital agreement may be amended or revoked only by a written agreement, signed by the parties." K.S.A. 2018 Supp. 23-2406.

Joseph did not object to the district court's failure to expressly find whether Jalyn voluntarily executed the Agreement or its failure to rule on the Agreement's enforceability. The district court has a duty to make adequate findings of fact and conclusions of law to explain its decision. See Supreme Court Rule 165. But a party must object to inadequate findings or conclusions to preserve the issue for appeal. When a party fails to object to inadequate findings of fact and conclusions of law, this court can presume the district court found all facts necessary to support its judgment. See *McIntyre*, 305 Kan. at 618. Remand is only necessary where the record does not support this presumption and the lack of findings and legal conclusions precludes meaningful review. See *O'Brien*, 294 Kan. at 361.

Joseph should have objected to the district court's lack of findings or requested additional or more definite findings. However, under the facts as currently presented, the district court's failure to find whether Jalyn voluntarily executed the Agreement or determine the Agreement's enforceability precludes meaningful review by this court. This court cannot determine the enforceability of the Agreement without independently

8

weighing the evidence before the district court, which it cannot do. See *Frick Farm Properties*, 289 Kan. at 709. Therefore, we must reverse the district court's decision and remand so the district court can make adequate factual findings and legal conclusions on whether the Agreement is enforceable. See *O'Brien*, 294 Kan. at 361.

Joseph correctly argues the district court erred when it concluded the parties "abandoned" the Agreement in 2003 by orally agreeing Jalyn would leave her job to stay home with the children. This issue requires this court to interpret and apply the KUPPA. Statutory interpretation is a question of law subject to unlimited review. When interpreting statutes, the Legislature's intent governs if that intent can be ascertained. This court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *In re Marriage of Traster*, 301 Kan. at 98.

The KUPAA limits how parties can amend or revoke an enforceable premarital agreement. "After marriage, a premarital agreement may be amended or revoked *only by a written agreement*, signed by the parties." (Emphasis added.) K.S.A. 2018 Supp. 23-2406. Here, the record does not show any written agreement signed by the parties revoking the premarital agreement. The district court's conclusion the parties effectively revoked their 1999 Agreement when they orally agreed in 2003 Jalyn would stay at home with the children is contrary to the plain language of K.S.A. 2018 Supp. 23-2406.

Joseph further argues the district court erred when it concluded the parties entered into a postmarital agreement in 2003 under K.S.A. 2018 Supp. 23-2712 when they orally agreed Jalyn would stay at home with the children. This issue also requires this court to interpret and apply the KUPPA, which is a question of law subject to unlimited review. As previously mentioned we look for legislative intent and it governs if that intent can be ascertained.

9

*In re Marriage of Traster* held all agreements entered into during a marriage providing for a spouse's property rights in the event of divorce or separation are "separation agreements" governed by K.S.A. 60-1610(b)(3)—now K.S.A. 2018 Supp. 23-2712. 301 Kan. at 103. This includes all agreements in which the parties intended to remain married at the time of execution. 301 Kan. at 103. Thus, the district court's decision here regarding the 2003 postmarital agreement is governed by K.S.A. 2018 Supp. 23-2712, which provides: "If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree."

Based on the district court's factual findings, the parties could have formed a valid separation agreement in 2003. A separation agreement under K.S.A. 2018 Supp. 23-2712 can be executed orally without a signed writing. See *Rice v. Rice*, 219 Kan. 569, 573-74, 549 P.2d 555 (1976). The parties did not need to contemplate divorce at the time of the separation agreement. See *In re Marriage of Traster*, 301 Kan. at 103. But nothing in K.S.A. 2018 Supp. 23-2712 suggests an oral postmarital agreement will supersede a valid premarital agreement under K.S.A. 2018 Supp. 23-2401 et seq. Thus, a postmarital agreement does not effectively revoke a premarital agreement because under K.S.A. 2018 Supp. 23-2406, a premarital agreement can be revoked *only* by the execution of another written agreement signed by the parties. See *Sierra Club v. Moser*, 298 Kan. 22, 54, 310 P.3d 360 (2013) (a specific statute controls over a general statute).

Joseph is correct. The district court's conclusion the parties entered into an oral postmarital agreement in 2003 under K.S.A. 2018 Supp. 23-2712 does not render the premarital agreement unenforceable because an *oral* postmarital agreement does not comply with the specific statutory requirements of K.S.A. 2018 Supp. 23-2406. On remand, the district court should determine the validity of the Agreement. If it finds the Agreement is invalid, it must determine if there was a separate oral agreement in 2003 that needs to be incorporated into the decree of divorce. However, the district court is

10

also free, based on its fact-finding, to determine no enforceable pre- or postmarital agreement survives and proceed to divide the assets of the marriage in a fair, just, and equitable manner.

Reversed and remanded with directions.